529 So.2d 1217 (1988)
In the Interest of D.N., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 87-2011.
District Court of Appeal of Florida, First District.
August 4, 1988.
Rehearing Denied September 14, 1988.
*1218 Michael E. Allen, Public Defender, and Maria Ines Suber, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Helen P. Nelson, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
This is an appeal from an order adjudging appellant, D.N., delinquent and placing him on community control. The state charged appellant with grand theft of an automobile as the result of an incident occurring on July 10, 1987, and with obstruction of police officers in the performance of their duties arising out of an incident occurring on July 17, 1987. In reference to the grand theft charge, appellant filed a motion to suppress statements made to law enforcement investigators on the grounds that his Miranda rights were violated and his statements were not voluntary. Appellant entered a plea of no contest to the obstruction charge. The court denied the motion to suppress, accepted the no contest plea to the obstruction charge, and held an adjudicatory hearing on the grand theft charge.
The state presented testimony from Vinson Burgess that appellant planned to meet him and a friend at a Tallahassee car dealership because they were going to "take two cars" (R. 99). Appellant did not arrive at the planned time, and Burgess and Garrett went ahead and stole a 1987 gray Buick LeSabre, which is the basis of the charge against appellant (R. 97, 98). Burgess stated that after he and Garrett left the dealership, they picked up appellant as he was walking along the road in Tallahassee. They also picked up four other boys and proceeded to drive the car to Quincy and then to Orlando (R. 97-99, 101). Burgess testified that at first the boys, including appellant, did not know the car was stolen, but before they left Tallahassee he told them it was stolen (R. 98, 99). On July 9, 1987, while traveling through Madison County on their return from Orlando, the boys were stopped for suspected involvement in a gas theft (they filled the tank and drove off without paying) (R. 67, 99). Deputy Sheriff Willie Odom, the officer who stopped the car, testified that he suspected that the car was stolen and advised the boys that he was going to place them under arrest (R. 68). He stated that he read the boys their rights and then took them to the station (R. 68, 69). Odom stated that he had difficulty determining whether the car was stolen because it was new, but did verify that the tag was stolen (R. 69). He stated that he and another officer tried to get statements from the boys, but that their stories were confusing and he eventually released them.[1]
*1219 State law enforcement investigators John Stevens and Doug Norman also testified for the state. Investigator Stevens testified that on July 23, 1987 (several days after the Madison County incident), after a high speed chase, he stopped a Toyota that he suspected was stolen. Appellant, who was a passenger in the Toyota, bailed out of the car while it was still moving and subsequently was apprehended by Stevens (R. 85). This incident gave rise to the obstruction charge.[2] Stevens stated that he took appellant to the police station and advised him of his constitutional rights, and that appellant waived those rights (R. 85, 86).[3] He stated that he advised appellant that he was under investigation concerning the theft of the Toyota, but did not charge appellant with anything at that point (R. 86). He interviewed appellant, and when asked whether appellant told him anything about the 1987 gray Buick LeSabre, Stevens replied "No" (R. 88).
Investigator Norman testified that later on July 23, 1987, he interviewed appellant in reference to a charge of "grand theft auto and a pursuit." Norman stated that appellant had been arrested on this charge, and that appellant had been advised of his Miranda rights and had voluntarily waived them (R. 91). Norman stated that appellant talked to him about several vehicle thefts in which he had been involved, and that appellant mentioned that he, along with two or three other people, had been stopped in Madison County in reference to the stolen Buick (R. 91, 92). Norman testified that appellant stated he knew the cars were stolen and was just going along for the ride (R. 92). Norman further testified that appellant said he was one of a group of boys who were taking cars from Tallahassee to sell in Miami or Orlando, and that appellant voluntarily mentioned the stolen Buick, stating that they took it from Tallahassee and that he knew when he got into the car that it was stolen (R. 92-94).
At the close of the state's case, appellant's attorney moved for a judgment of acquittal on the ground that the evidence was insufficient to prove theft of the Buick automobile by appellant. Appellant's counsel argued that, even assuming appellant knew the vehicle was stolen, his mere presence as a passenger, without exercising any possession or control of the car, did not make him guilty of theft. The court denied the motion.
Appellant was the sole defense witness. He testified that when he first got into the Buick he did not know it was stolen; he stated that a couple of the boys asked Burgess if the car was stolen and Burgess told them that it was his mother's car (R. 107). He stated that, although there was some discussion among the boys as to whether the car was stolen, he believed the car belonged to Burgess's mother because she had a gray Buick similar to it (R. 107-109). When questioned about the statements he gave to Investigators Stevens and Norman, appellant testified that he had lied to them because they led him to believe that he would get off easier if he gave them information (R. 109-111). He stated that most of the information he gave to the investigators was true, but that he was not actually involved in trying to sell any stolen cars (R. 111-112).
The court denied appellant's renewed motion for judgment of acquittal and found him guilty of grand theft as charged. At the disposition hearing, the court adjudged appellant delinquent and placed him on community control with special conditions, including restitution in an amount to be determined by negotiation or restitution hearing.
Appellant first attacks his adjudication of delinquency for grand theft auto on the ground that the state did not prove he violated section 812.014(1), Florida Statutes (1985), and thus the court erred in denying *1220 his motion for judgment of acquittal. Section 812.014(1) states:
(1) A person is guilty of theft if he knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit therefrom;
(b) Appropriate the property to his own use or to the use of any person not entitled thereto.
Section 812.012(2) defines "obtains or uses" as used in 812.014 to mean any manner of
(a) Taking or exercising control over property.
(b) Making any unauthorized use, disposition, or transfer of property.
(c) Obtaining property by fraud, willful misrepresentation of a future act, or false promise.
(d) 1. Conduct previously known as stealing; larceny; purloining; abstracting; embezzlement; misapplication; misappropriation; conversion; or obtaining money or property by false pretenses; fraud, or deception; or
2. Other conduct similar in nature.
The 1977 legislature enacted section 812.014, commonly referred to as the "omnibus theft statute," as part of its overall revision of the criminal statutes relating to theft and stolen property. See, e.g., State v. Lewis, 364 So.2d 1223 (Fla. 1978); Colvin v. State, 445 So.2d 657 (Fla. 1st DCA 1984). Since its enactment, the supreme court has upheld the constitutionality of section 812.014 against challenges on several different grounds.
The supreme court has rejected the argument that section 812.014 is so vague and broad that it improperly delegates excessive discretion to law enforcement officials and allows selective prosecution. Dunnigan v. State, 364 So.2d 1217 (Fla. 1978). The court has also rejected the argument that section 812.014 violates the constitutional prohibition against cruel and unusual punishment, State v. Belgrave, 364 So.2d 1225 (Fla. 1978), and has held that the title of the bill enacting section 812.014 meets constitutional requirements. Williams v. State, 370 So.2d 1143 (Fla. 1979).
In State v. Allen, 362 So.2d 10 (Fla. 1978), the trial court had found the statute invalid on two grounds: one, that omission of the words "with unlawful intent" left it devoid of any specific intent element; and two, that the term "endeavors" as used in the statute was impermissibly vague. The supreme court reversed, holding that the statute required specific criminal intent notwithstanding the omission of the word "unlawful." It rejected the trial court's construction of the statute as "unduly technical" because "it is obvious that the term `endeavors' means an overt act manifesting criminal intent, rather than merely the formulation of a mental intent." 362 So.2d at 11, 12.
In State v. Dunmann, 427 So.2d 166 (Fla. 1983), the court held that the specific intent necessary for the commission of a theft under this statute "is the intent to steal, not the intent to permanently deprive an owner of his property." Id. at 167. And in State v. Sykes, 434 So.2d 325 (Fla. 1983), the court held that the inclusion in section 812.014(1) of the words "or endeavors to obtain or use" revealed "a legislative intent to define theft as including the attempt to commit theft." Id. at 327. Consequently, the court held, it was error to instruct the jury on attempt to commit theft as a lesser included offense of the theft charge.
In State v. Lewis, 364 So.2d 1223, the trial court had held sections 812.014(1)(b) and (2)(b) unconstitutional because they were so indefinite and overbroad that inherently innocent conduct was prohibited, in violation of the due process clause, and in violation of the right to acquire, possess, and protect property, and of the right to contract. The supreme court reversed, holding that although State v. Allen involved a charge of larceny, the reasoning employed in that case with regard to the requirement of specific criminal intent applied equally to the offense of receiving stolen property, another offense now encompassed by the omnibus theft statute, section 812.014.
*1221 This court interpreted section 812.014 in Colvin v. State, 445 So.2d 657 (Fla. 1st DCA 1984), to mean that the person who "buys stolen property with knowledge of its stolen character is just as guilty of theft as the person who physically removed the property from the owner's possession" because, quoting from the Fifth District's decision in Brewer v. State, 413 So.2d 1217, 1219 (Fla. 5th DCA 1982), "`how the property of another is acquired is no longer important.'" Id. at 660. In Patten v. State, 492 So.2d 748 (Fla. 2d DCA 1986), the Second District, relying on our decision in Colvin, held the statute's elements were satisfied where an accused was proven to have been in possession of recently stolen property, "without regard to whether appellant was the actual one to `take' the items from Ms. Olinger's auction house." Id. at 750.
These cases indicate that section 812.014 is intended to encompass all aspects of criminal theft in a very broad manner. Although it appears that in each of the cited cases the defendant had possession or control of the stolen property, there was no explicit discussion of this specific element. Apparently, the definition of "obtains or uses" as including "making any unauthorized use" of property, § 812.012(2), Fla. Stat. (1987), is sufficiently broad to include one's use of stolen property with knowledge of its stolen character whether or not that party also is shown to have exercised possession, dominion or control over the stolen property as distinguished from incidental use of the property while in the possession or control of another.
In the case now before us, the state presented evidence that appellant rode in the Buick with knowledge that it was stolen. It did not offer any evidence to establish that appellant exercised possession, dominion or control over the stolen vehicle, and the only inference that can be drawn from the evidence of record is that the stolen Buick was at all times in the possession, dominion or control of Burgess, the state's witness. Nor does the testimony by Burgess that appellant had planned to meet him to steal two cars from the dealership constitute proof of the criminal intent required by the statute, because appellant's intent must be proven by "an overt act manifesting criminal intent, rather than merely the formulation of mental intent." State v. Allen, 362 So.2d at 12. Therefore, appellant's conviction can be sustained only on the notion that proof of unauthorized use or enjoyment of stolen property with knowledge that it is stolen is sufficient under the statute to constitute grand theft. Presumably, the lack of possession or control is made up by a finding of the requisite specific criminal intent to use the property without the owner's permission. Based on the broad constructions of section 812.014 given in the above cases, we feel compelled to hold, as did the trial judge, that the state's evidence of appellant's conduct is sufficient to prove the offense of theft under section 812.014. We affirm on this point.
We must observe, however, that such a broad interpretation of this statutory concept  use or endeavor to use the property of another without authorized permission  can lead to bizarre, if not absurd, results.[4] For example, to demonstrate the absurdity of interpreting 812.014 to encompass the facts of this case where appellant exercised no possession or control over the stolen vehicle, appellant asks whether a hitchhiker who accepts a ride in an automobile that he later finds to be stolen would be guilty of grand theft if he thereafter continued to ride in the automobile and enjoy its use rather than asking the driver to stop and let him out. Appellant also asks whether a person who continues to watch a television set at the home of the thief after finding out that the set was stolen would be guilty of grand theft. Although a finding of guilt in these situations seems rather farfetched, the hypothetical hitchhiker and television viewer are clearly making personal *1222 use of stolen property with knowledge it has been stolen, and presumably would be guilty of violating section 812.014. In view of the inherent uncertainty of the scope of section 812.014, due to its dependence on the implied element of specific criminal intent for its validity, we certify to the supreme court the following question of great public importance:
CAN APPELLANT'S CONVICTION OF THEFT UNDER SECTION 812.014 BASED ON HIS KNOWINGLY RIDING IN A STOLEN AUTOMOBILE BE SUSTAINED IN THE ABSENCE OF ANY EVIDENCE THAT HE EXERCISED POSSESSION, DOMINION OR CONTROL OF THE VEHICLE?
Appellant next contends that the trial court erred in denying his motion to suppress the statements he made to Investigators Stevens and Norman. A tape recording of Stevens's interview with appellant indicates the following colloquy took place during Stevens's statement of the Miranda warnings to appellant:[5]
Inv. Stevens: You have the right to consult a lawyer, you have the right to talk to a lawyer before you answer any questions or make any statements and to have him present during the questioning.
Do you understand that?
D.N.: Yes, I understand that.
Inv. Stevens: Put your initials out there next to that one too. Okay, if you cannot afford a lawyer, one will be appointed for you before any questioning or at any time during questioning, if you want one, if you so desire, okay?
D.N.: Yes, sir.
Inv. Stevens: You looked confused. You need that one explained any?

D.N.: Yeah, I need you to explain.

Inv. Stevens: Okay, well what happens is if we decide that you should be charged with stealing the car, you're going to be looking at some charges and if we charge you, you have the right to an attorney. In other words, you don't like what we're saying and you decide that you don't want to talk, you have the right to an attorney.
D.N.: Yes, sir.
Inv. Stevens: Okay. Now what happens with that is that everything will stop right now. We won't talk to you any more, but then we'll have to go ahead and charge you full out with the charges and then you'll be released probably to your mama tonight and then you're going to have to appear before a judge and tell him you can't afford an attorney. Your mama will have to go and tell him she can't afford an attorney, and the judge will decide whether or not he agrees with her or not. And, if he does, then he will appoint an attorney. See, that will be a public defender, and that will be your lawyer. And then we'll come back and try to ask you some more questions then with the lawyer. Okay?
D.N.: Yes, sir.
Inv. Stevens: Do you have any more questions on that particular one?
D.N.: No.
Inv. Stevens: Okay, put your initials next to that one too. Okay if you answer any questions, make any statement without consulting this lawyer or without having a lawyer present during questioning, you will still have the right to stop. So in other words what that means is, like if we start talking right now and you decide you want to talk to us as you have indicated that you do, and all of a sudden things don't look like they're going too good or you're getting upset or any reason at all you decide you want to stop, you can stop, okay?
D.N.: Okay.
Inv. Stevens: Okay, now let's see where we are. And then you can stop until such time as you can consult with an attorney, but again you will be charged and... Okay, you understand that?
D.N.: Yes, sir.
[Emphasis added.]
In Cribbs v. State, 378 So.2d 316 (Fla. 1st DCA 1980), the defendant was picked up for questioning and given the standard Miranda *1223 warnings. He responded by advising the officer that he wanted to speak to an attorney prior to questioning. While the defendant was placing the call to the public defender's office, the officer told him that a public defender could not represent him "unless the court appoints him to represent you on a particular matter before you have a first hearing, or know that you have been charged" [sic]. The defendant was unable to reach his attorney, agreed to go ahead and talk with the officer, and made a confession. He was then transported to a jail where he was again advised of his Miranda rights. He signed a waiver of rights form, and then made another confession. We held that the first confession should have been suppressed because the officer's remarks that the defendant could not talk with a public defender until the attorney had been appointed by the court vitiated the Miranda warnings previously given to the defendant. We stated, "[n]ot only was the statement made by Parrish [the officer] to Cribbs [the defendant] misleading and confusing regarding his right to counsel prior to questioning, it was a misstatement of applicable Florida law... . Florida law clearly envisions immediate access to counsel upon the request of an indigent defendant in custody, notwithstanding the lack of formal appointment of counsel by a judicial officer." 378 So.2d at 318. We also held that the second confession should have been suppressed because the warnings given were insufficient to erase the taint of misinformation Chief Parrish gave to Cribbs.
Applying the rationale of Cribbs, we reach the same result under the facts of this case. We are confident that neither investigator intentionally misled appellant concerning his rights, or acted malevolently in any way. But whether appellant was deprived of his constitutional right to counsel does not depend upon a malevolent intent to mislead on the part of the investigating officers. The question turns on the appellant's state of mind, not the investigator's, and the potential effect on appellant of the words used to explain his rights during the warning required by Miranda. See Arizona v. Roberson, ___ U.S. ___, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). While Stevens was advising appellant of his rights, appellant exhibited confusion regarding his right to counsel. The investigation had clearly reached the accusatory stage, yet upon appellant's request for an explanation of his right, Stevens told appellant that "if we charge you, you have the right to an attorney." This is a misstatement of appellant's constitutional right to obtain counsel prior to any questioning. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Stevens further explained that if appellant wanted an attorney, the questioning would stop, he would have to fully charge appellant, and then appellant would have to be adjudicated indigent before the court would appoint an attorney. These added comments, even though intended to be descriptive of the procedure to be followed, undoubtedly had a chilling coercive effect, for appellant could easily have understood that he could avoid being charged only by not insisting upon his right to an attorney. Although the defendant in Cribbs first requested an attorney and was then given the misinformation, we find this difference immaterial. Appellant might well have requested an attorney if Stevens had not misinformed appellant as to when the right attached and had not indicated that charges would have to be filed if appellant did exercise his right to counsel. The lower court erred in denying appellant's motion to suppress the statements made to Investigator Stevens.
The court also erred in denying the motion to suppress the subsequent statements to Investigator Norman. Even though Norman gave appellant his Miranda warnings and appellant waived them, the warnings given were insufficient to erase the taint of the misinformation Stevens gave to appellant. Cribbs v. State, 378 So.2d at 319. See Arizona v. Roberson, ___ U.S. ___, 108 S.Ct. 2093.
Although the lower court's denial of the motion to suppress the statements made to Investigator Stevens was error, we find that error harmless because Stevens's testimony revealed no inculpatory statements by appellant concerning the Buick. The *1224 denial of the motion as to statements made to Investigator Norman was not harmless error, however, for Norman testified about appellant's confessed knowledge that the Buick was stolen. Therefore, we must reverse the denial of the motion to suppress, reverse the adjudication of conviction, and remand for further proceedings.
As a final point on appeal, appellant argues that section 775.089(1)(a), Florida Statutes (1987), the statute governing restitution,[6] requires a determination that the defendant caused the damages before the defendant can be ordered to pay restitution. The supreme court recently construed this statute in State v. Williams, 520 So.2d 276 (Fla. 1988). In Williams the lower court had ordered the defendant to pay restitution damages for leaving the scene of an accident even though the damages transpired independently of the crime. The supreme court reversed and remanded for resentencing, holding that the lower court could not order the defendant to pay restitution for damages not caused by the crime for which she was convicted. The court observed that the lower court had not made a determination that the defendant caused the damages for which it had ordered restitution, and that the statute is clear in restricting restitution to damages which a defendant caused directly or indirectly.
In Williams it was clear that the damages for which the defendant was required to pay restitution transpired independently of the crime. Here, the relationship between the damages and the theft is not clear, as the state presented no evidence of causation. Rather, the evidence was limited to the testimony of the manager of the car dealership from which the Buick was stolen that the amount of damage upon return of the car was approximately eight hundred dollars. The lower court did not make any determination that appellant's perpetration of the crime for which he was adjudicated delinquent caused these damages. Since the court was required to make such determination before ordering restitution under Williams, we vacate the imposition of restitution and remand for further proceedings on this issue.
In summary, we hold that the evidence is legally sufficient to support appellant's conviction, that the court erred in denying appellant's motion to suppress, and that the imposition of restitution is error in the absence of proof and findings that appellant's criminal conduct actually caused the damages. The conviction must therefore be reversed and the cause remanded for a new trial.
AFFIRMED in part, REVERSED in part, and REMANDED for a new trial.
SMITH and JOANOS, JJ., concur.
NOTES
[1] The record is unclear as to whether all of the boys were placed under arrest or whether Burgess was the only person arrested.
[2] The petition charging appellant with obstruction of police officers alleges that he committed this crime on July 17, 1987. Stevens, however, testified that this crime occurred on July 23, 1987.
[3] The transcript of Stevens's interview of appellant indicated that appellant was confused over his right to counsel, but did not request an attorney at that time. (See p. 1222, infra.)
[4] This court does not evaluate the wisdom underlying the legislative intent of section 812.014 as applied to the facts of this case.
[5] The tape recording of the interview was present at the hearing, but not put in evidence. A typewritten transcript of a portion thereof is incorporated in appellant's motion to suppress.
[6] Section 775.089(1)(a) provides:

In addition to any punishment, the court shall order the defendant to make restitution to the victim for damage or loss caused directly or indirectly by the defendant's offense, unless it finds reasons not to order such restitution.