# ARIZONA v. ROBERSON

No. 87–354.   Argued March 29, 1988—Decided June 15, 1988

676

STEVENS, J., delivered the opinion of the Court,. in which BRENNAN, WHITE, MARSHALL, BLACKMUN, and SCALIA, JJ., joined. KENNEDY, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post*, p. 688. O'CONNOR, J., took no part in the consideration or decision of the case.

*Bruce M. Ferg*, Assistant Attorney General of Arizona, argued the cause for petitioner. With him on the briefs were

*Robert K. Corbin*, Attorney General, and *William J. Schafer III*.

*Paul J. Larkin, Jr.*, argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Fried, Assistant Attorney General Weld, Deputy Solicitor General Bryson, Harriet S. Shapiro*, and *Joel M. Gershowitz*.

*Robert L. Barrasso*, by appointment of the Court, 484 U. S. 1024, argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

In *Edwards* v. *Arizona*, 451 U. S. 477, 484–485 (1981), we held that a suspect who has "expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." In this case Arizona asks us to craft an exception to that rule for cases in which the police want to interrogate a suspect about an offense that is unrelated to the subject of their initial interrogation. Several years ago the Arizona Supreme Court considered, and rejected, a similar argument, stating:

"The only difference between Edwards and the appellant is that Edwards was questioned about the same of-

---

* Briefs of *amici curiae* urging reversal were filed for the State of Indiana et al. by *Linley E. Pearson*, Attorney General of Indiana, and *William E. Daily* and *Michael Gene Worden*, Deputy Attorneys General, and by the Attorneys General for their respective States as follows: *Duane Woodard* of Colorado, *Jim Smith* of Florida, *Jim Jones* of Idaho, *Frederick J. Cowan* of Kentucky, *Hubert H. Humphrey III* of Minnesota, *Mike Moore* of Mississippi, *Mike Greely* of Montana, *Lacy H. Thornburg* of North Carolina, *Roger Tellinghuisen* of South Dakota, *Mary Sue Terry* of Virginia, *Charlie Brown* of West Virginia, and *Archie G. McClintock* of Wyoming; and for Americans for Effective Law Enforcement, Inc., et al. by *David Crump, Courtney A. Evans, Bernard J. Farber, Daniel B. Hales, Jack E. Yelverton, Fred E. Inbau, Wayne W. Schmidt*, and *James P. Manak*.

fense after a request for counsel while the appellant was reinterrogated about an unrelated offense. We do not believe that this factual distinction holds any legal significance for fifth amendment purposes." *State* v. *Routhier*, 137 Ariz. 90, 97, 669 P. 2d 68, 75 (1983), cert. denied, 464 U. S. 1073 (1984).

We agree with the Arizona Supreme Court's conclusion.

I

On April 16, 1985, respondent was arrested at the scene of a just-completed burglary. The arresting officer advised him that he had a constitutional right to remain silent and also the right to have an attorney present during any interrogation. See *Miranda* v. *Arizona*, 384 U. S. 436, 467–479 (1966). Respondent replied that he "wanted a lawyer before answering any questions."[1] This fact was duly recorded in the officer's written report of the incident. In due course, respondent was convicted of the April 16, 1985, burglary.

On April 19, 1985, while respondent was still in custody pursuant to the arrest three days earlier, a different officer interrogated him about a different burglary that had occurred on April 15. That officer was not aware of the fact that respondent had requested the assistance of counsel three days earlier. After advising respondent of his rights, the officer obtained an incriminating statement concerning the April 15 burglary. In the prosecution for that offense, the trial court suppressed that statement. In explaining his ruling, the trial judge relied squarely on the Arizona Supreme Court's opinion in *State* v. *Routhier*, 137 Ariz., at 97, 669 P. 2d, at 75, characterizing the rule of the *Edwards* case as "clear and unequivocal."[2]

---

[1] Tr. 26 (Apr. 3, 1986).

[2] "Routhier was based on Edwards versus Arizona which held that once the defendant has invoked his right to counsel, he may not be re-

The Arizona Court of Appeals affirmed the suppression order in a brief opinion, stating:

"In *Routhier*, as in the instant case, the accused was continuously in police custody from the time of asserting his Fifth Amendment right through the time of the impermissible questioning. The coercive environment never dissipated." App. to Pet. for Cert. 24.

The Arizona Supreme Court denied a petition for review. *Id.*, at 25. We granted certiorari to resolve a conflict with certain other state court decisions.[3] 484 U. S. 975 (1987). We now affirm.

---

interrogated unless counsel has been made available to him or he initiates the conversation.

"The Routhier court states that whether the defendant is re-interrogated about the same offense or an unrelated offense makes no difference for Fifth Amendment purposes.

"The Routhier court further stated that Edwards is clear and unequivocal, there is to be no further interrogation by authorities once the right to counsel is invoked. The Court in that case finding that the assertion of the right to counsel is an assertion by the accused that he is not competent to deal with authorities without legal advice. And that the resumption of questioning by the police without the requested attorney being provided, strongly suggests to the accused that he has no choice but to answer." App. to Pet. for Cert. 15–16.

[3] See *State* v. *Dampier*, 314 N. C. 292, 333 S. E. 2d 230 (1985) (*Edwards* inapplicable to interrogation by authorities from different State concerning unrelated matter); *McFadden* v. *Commonwealth*, 225 Va. 103, 300 S. E. 2d 924 (1983) (*Edwards* inapplicable when authorities from different county question suspect about different crime); see also *Lofton* v. *State*, 471 So. 2d 665 (Fla. App.) (no *Edwards* violation when suspect is represented by attorney in unrelated matter, then questioned without counsel present), review denied, 480 So. 2d 1294 (Fla. 1985); *State* v. *Newton*, 682 P. 2d 295 (Utah 1984) (same); *State* v. *Cornethan*, 38 Wash. App. 231, 684 P. 2d 1355 (1984) (alternative holding: *Edwards* inapplicable to interrogation in unrelated investigation; court also holds that representation by attorney in unrelated matter does not suffice as request for counsel for *Edwards* purposes); cf. *State* v. *Harriman*, 434 So. 2d 551 (La. App.) (adopts petitioner's view here, but only after holding that suspect had initiated conversation regarding second investigation), writ denied, 440 So. 2d 729 (La.

## II

A major purpose of the Court's opinion in *Miranda* v. *Arizona*, 384 U. S., at 441–442, was "to give concrete constitutional guidelines for law enforcement agencies and courts to follow." "As we have stressed on numerous occasions, '[o]ne of the principal advantages' of *Miranda* is the ease and clarity of its application. *Berkemer* v. *McCarty*, 468 U. S. 420, 430 (1984); see also *New York* v. *Quarles*, [467 U. S. 649, 662–664 (1984)] (concurring opinion); *Fare* v. *Michael C.*, 442 U. S. [707, 718 (1979)]." *Moran* v. *Burbine*, 475 U. S. 412, 425 (1986).

The rule of the *Edwards* case came as a corollary to *Miranda*'s admonition that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." 384 U. S., at 474. In such an instance, we had concluded in *Miranda*, "[i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.*, at 475. In *Edwards*, we "reconfirm[ed] these views and, to lend them substance, emphasize[d] that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U. S., at 485. We concluded that reinterrogation may only occur if "the accused himself initiates

---

1983); but see *United States ex rel. Espinoza* v. *Fairman*, 813 F. 2d 117, 124–126 (CA7) (same rule as Arizona), cert. denied, 483 U. S. 1010 (1987); *Luman* v. *State*, 447 So. 2d 428 (Fla. App. 1984) (same); *Radovsky* v. *State*, 296 Md. 386, 464 A. 2d 239 (1983) (same); see also *Boles* v. *Foltz*, 816 F. 2d 1132, 1137–1141 (CA6) (Gibson, J., dissenting) (same; majority does not reach issue), cert. denied, 484 U. S. 857 (1987); cf. *United States* v. *Scalf*, 708 F. 2d 1540, 1544 (CA10 1983) (knowledge of request for counsel "is imputed to all law enforcement officers who subsequently deal with the suspect"); *State* v. *Arceneaux*, 425 So. 2d 740 (La. 1983) (same).

further communication, exchanges, or conversations with the police." *Ibid.* Thus, the prophylactic protections that the *Miranda* warnings provide to counteract the "inherently compelling pressures" of custodial interrogation and to "permit a full opportunity to exercise the privilege against self-incrimination," 384 U. S., at 467, are implemented by the application of the *Edwards* corollary that if a suspect believes that he is not capable of undergoing such questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the "inherently compelling pressures" and not the purely voluntary choice of the suspect. As JUSTICE WHITE has explained, "the accused having expressed his own view that he is not competent to deal with the authorities without legal advice, a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Michigan* v. *Mosley,* 423 U. S. 96, 110, n. 2 (1975) (concurring in result).

We have repeatedly emphasized the virtues of a bright-line rule in cases following *Edwards* as well as *Miranda.* See *Michigan* v. *Jackson,* 475 U. S. 625, 634 (1986); *Smith* v. *Illinois,* 469 U. S. 91, 98 (1984) *(per curiam); Solem* v. *Stumes,* 465 U. S. 638, 646 (1984); see also *Shea* v. *Louisiana,* 470 U. S. 51 (1985); *Oregon* v. *Bradshaw,* 462 U. S. 1039, 1044 (1983) (plurality opinion) (REHNQUIST, J.). In *Fare* v. *Michael C.,* 442 U. S. 707, 718 (1979), we explained that the "relatively rigid requirement that interrogation must cease upon the accused's request for an attorney . . . has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible. This gain in specificity, which benefits the accused and the State alike, has been thought to outweigh the burdens that the de-

cision in *Miranda* imposes on law enforcement agencies and the courts by requiring the suppression of trustworthy and highly probative evidence even though the confession might be voluntary under traditional Fifth Amendment analysis."[4] The *Edwards* rule thus serves the purpose of providing "clear and unequivocal" guidelines to the law enforcement profession. Surely there is nothing ambiguous about the requirement that after a person in custody has expressed his desire to deal with the police only through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U. S., at 484–485.

## III

Petitioner contends that the bright-line, prophylactic *Edwards* rule should not apply when the police-initiated interrogation following a suspect's request for counsel occurs in the context of a separate investigation. According to petitioner, both our cases and the nature of the factual setting compel this distinction. We are unpersuaded.

---

[4] It is significant that our explanation of the basis for the *"per se* aspect of *Miranda"* in *Fare* v. *Michael C.*, 442 U. S., at 719, applies to the application of the *Edwards* rule in a case such as this. As we stated in *Fare:*

"The rule in *Miranda* . . . was based on this Court's perception that the lawyer occupies a critical position in our legal system because of his unique ability to protect the Fifth Amendment rights of a client undergoing custodial interrogation. Because of this special ability of the lawyer to help the client preserve his Fifth Amendment rights once the client becomes enmeshed in the adversary process, the Court found that 'the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system' established by the Court. [384 U. S.], at 469. Moreover, the lawyer's presence helps guard against overreaching by the police and ensures that any statements actually obtained are accurately transcribed for presentation into evidence. *Id.*, at 470.

"The *per se* aspect of *Miranda* was thus based on the unique role the lawyer plays in the adversary system of criminal justice in this country." 442 U. S., at 719.

Petitioner points to our holding in *Michigan* v. *Mosley*, 423 U. S., at 103–104 (quoting *Miranda* v. *Arizona*, 384 U. S., at 479), that when a suspect asserts his right to cut off questioning, the police may "'scrupulously honor'" that right by "immediately ceas[ing] the interrogation, resum[ing] questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restrict[ing] the second interrogation to a crime that had not been a subject of the earlier interrogation." 423 U. S., at 106. The police in this case followed precisely that course, claims the State. However, as *Mosley* made clear, a suspect's decision to cut off questioning, unlike his request for counsel, does not raise the presumption that he is unable to proceed without a lawyer's advice. See *id.*, at 101, n. 7; *id.*, at 110, n. 2 (WHITE, J., concurring in result), quoted *supra*, at 681.

Petitioner points as well to *Connecticut* v. *Barrett*, 479 U. S. 523, 525 (1987), which concerned a suspect who had "told the officers that he would not give a written statement unless his attorney was present but had 'no problem' talking about the incident." We held that this was a limited request for counsel, that Barrett himself had drawn a distinction between oral and written statements and thus that the officers could continue to question him. Petitioner argues that Roberson's request for counsel was similarly limited, this time to the investigation pursuant to which the request was made. This argument is flawed both factually and legally. As a matter of fact, according to the initial police report, respondent stated that "he wanted a lawyer before answering *any* questions."[5] As a matter of law, the presumption raised by a suspect's request for counsel—that he considers himself unable to deal with the pressures of custodial interrogation without legal assistance—does not disappear simply because the police have approached the suspect, still in custody, still without counsel, about a separate investigation.

---

[5] Tr. 26 (Apr. 3, 1986) (emphasis added); see *id.*, at 23; Tr. 12 (Oct. 17, 1985, a.m.).

That a suspect's request for counsel should apply to any questions the police wish to pose follows, we think, not only from *Edwards* and *Miranda*, but also from a case decided the same day as *Barrett*. In *Colorado* v. *Spring*, 479 U. S. 564, 577 (1987), we held that "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." In the face of the warning 'that anything he said could be used as evidence against him, Spring's willingness to answer questions, without limiting such a waiver, see *Connecticut* v. *Barrett, supra*, indicated that he felt comfortable enough with the pressures of custodial interrogation both to answer questions and to do so without an attorney. Since there is "no qualification of [the] broad and explicit warning" that "*anything* [a suspect] says may be used against him," 479 U. S., at 577 (emphasis in original), Spring's decision to talk was properly considered to be equally unqualified. Conversely, Roberson's unwillingness to answer any questions without the advice of counsel, without limiting his request for counsel, indicated that he did not feel sufficiently comfortable with the pressures of custodial interrogation to answer questions without an attorney. This discomfort is precisely the state of mind that *Edwards* presumes to persist unless the suspect himself initiates further conversation about the investigation; unless he otherwise states, see *Connecticut* v. *Barrett, supra*, there is no reason to assume that a suspect's state of mind is in any way investigation-specific, see *Colorado* v. *Spring, supra*.

Finally, petitioner raises the case of *Maine* v. *Moulton*, 474 U. S. 159, 161 (1985), which held that Moulton's "Sixth Amendment right to the assistance of counsel was violated by the admission at trial of incriminating statements made by him to his codefendant, a secret government informant, after indictment and at a meeting of the two to plan defense strategy for the upcoming trial." That case did not involve any

*Miranda* issue because Moulton was not in custody. In our opinion, we rejected an argument that the statements should be admissible because the police were seeking information regarding both the crime for which Moulton had already been indicted, and a separate, inchoate scheme. Following *Massiah* v. *United States*, 377 U. S. 201, 207 (1964), we recognized, though, that the continuing investigation of uncharged offenses did not violate the defendant's Sixth Amendment right to the assistance of counsel. Our recognition of that fact, however, surely lends no support to petitioner's argument that in the Fifth Amendment context, "statements about different offenses, developed at different times, by different investigators, in the course of two wholly independent investigations, should not be treated the same." Brief for Petitioner 32. This argument overlooks the difference between the Sixth Amendment right to counsel and the Fifth Amendment right against self-incrimination. The former arises from the fact that the suspect has been formally charged with a particular crime and thus is facing a state apparatus that has been geared up to prosecute him. The latter is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges.

In sum, our cases do not support petitioner's position.

## IV

Petitioner's attempts at distinguishing the factual setting here from that in *Edwards* are equally unavailing. Petitioner first relies on the plurality opinion in *Oregon* v. *Bradshaw*, 462 U. S., at 1044 (REHNQUIST, J.), which stated that *Edwards* laid down "a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Ed-*

*wards* was." Petitioner reasons that "the chances that an accused will be questioned so repeatedly and in such quick succession that it will 'undermine the will' of the person questioned, or will constitute 'badger[ing],' are so minute as not to warrant consideration, if the officers are truly pursuing separate investigations." Brief for Petitioner 16. It is by no means clear, though, that police engaged in separate investigations will be any less eager than police involved in only one inquiry to question a suspect in custody. Further, to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling. Thus, we also disagree with petitioner's contention that fresh sets of *Miranda* warnings will "reassure" a suspect who has been denied the counsel he has clearly requested that his rights have remained untrammeled. See *ibid.* Especially in a case such as this, in which a period of three days elapsed between the unsatisfied request for counsel and the interrogation about a second offense, there is a serious risk that the mere repetition of the *Miranda* warnings would not overcome the presumption of coercion that is created by prolonged police custody.[6]

---

[6] The United States, as *amicus curiae* supporting petitioner, suggests similarly that "respondent's failure to reiterate his request for counsel to [the officer involved in the second investigation], even after [that officer] gave respondent complete *Miranda* warnings, could not have been the result of any doubt on respondent's part that the police would honor a request for counsel if one were made." Brief for United States as *Amicus Curiae* 10. This conclusion is surprising, considering that respondent had not been provided with the attorney he had already requested, despite having been subjected to police-initiated interrogation with respect to the first investigation as well. See n. 7, *infra.* We reiterate here, though, that the "right" to counsel to protect the Fifth Amendment right against self-incrimination is not absolute; that is, "[i]f authorities conclude that they will not provide counsel during a reasonable period of time in which investigation in the field is carried out, they may refrain from doing so without violating the person's Fifth Amendment privilege so long as they

The United States, as *amicus curiae* supporting petitioner, suggests that a suspect in custody might have "good reasons for wanting to speak with the police about the offenses involved in the new investigation, or at least to learn from the police what the new investigation is about so that he can decide whether it is in his interest to make a statement about that matter without the assistance of counsel." Brief for United States as *Amicus Curiae* 11. The simple answer is that the suspect, having requested counsel, can determine how to deal with the separate investigations with counsel's advice. Further, even if the police have decided temporarily not to provide counsel, see n. 6, *supra*, they are free to inform the suspect of the facts of the second investigation as long as such communication does not constitute interrogation, see *Rhode Island* v. *Innis*, 446 U. S. 291 (1980). As we have made clear, any "further communication, exchanges, or conversations with the police" that the suspect himself initiates, *Edwards* v. *Arizona*, 451 U. S., at 485, are perfectly valid.

Finally, we attach no significance to the fact that the officer who conducted the second interrogation did not know that respondent had made a request for counsel. In addition to the fact that *Edwards* focuses on the state of mind of the suspect and not of the police, custodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel. In this case respondent's request had been properly memorialized in a written report but the officer who conducted the interrogation simply failed to examine that report. Whether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation, the same need to determine

---

do not question him during that time." *Miranda* v. *Arizona*, 384 U. S. 436, 474 (1966).

whether the suspect has requested counsel exists.[7] The police department's failure to honor that request cannot be justified by the lack of diligence of a particular officer. Cf. *Giglio* v. *United States*, 405 U. S. 150, 154 (1972).

The judgment of the Arizona Court of Appeals is

*Affirmed.*

JUSTICE O'CONNOR took no part in the consideration or decision of this case.

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE joins, dissenting.

The majority frames the case as one in which we are asked to "craft an exception" to *Edwards* v. *Arizona*, 451 U. S. 477 (1981). *Ante*, at 677. The implication from this, it would seem, is that the burden of proof falls on those who say no constitutional or preventative purpose is served by prohibiting the police from asking a suspect, once he has requested counsel, if he chooses to waive that right in a new and independent investigation of a different crime. But the rule of *Edwards* is our rule, not a constitutional command; and it is our obligation to justify its expansion. Our justification must be consistent with the practical realities of suspects' rights and police investigations. With all respect, I suggest the majority does not have a convincing case. The majority's rule is not necessary to protect the rights of suspects, and it will in many instances deprive our nationwide law enforcement network of a legitimate investigative technique now routinely used to resolve major crimes.

---

[7] Indeed, the facts of this case indicate that different officers investigating the same offense are just as likely to bypass proper procedures as an officer investigating a different offense, inasmuch as the record discloses no less than five violations of the *Edwards* rule, four concerning the April 16 burglary and only one concerning the April 15 burglary. See Tr. 23–24, 49 (Apr. 3, 1986); Tr. 8–12 (Oct. 17, 1985, p.m.). It is only the last violation that is at issue in this case.

When a suspect is in custody for even the most minor offense, his name and fingerprints are checked against master files. It is a frequent occurrence that the suspect is wanted for questioning with respect to crimes unrelated to the one for which he has been apprehended. The rule announced today will bar law enforcement officials, even those from some other city or other jurisdiction, from questioning a suspect about an unrelated matter if he is in custody and has requested counsel to assist in answering questions put to him about the crime for which he was arrested.

This is the first case in which we are asked to apply *Edwards* to separate and independent investigations. The statements deemed inadmissible in *Edwards* and in our later cases applying its doctrine were statements relating to the same investigation in which the right to counsel was invoked. See *Connecticut* v. *Barrett*, 479 U. S. 523 (1987); *Smith* v. *Illinois*, 469 U. S. 91 (1984); *Solem* v. *Stumes*, 465 U. S. 638 (1984); *Oregon* v. *Bradshaw*, 462 U. S. 1039 (1983); *Wyrick* v. *Fields*, 459 U. S. 42 (1982). The majority's extension of the *Edwards* rule to separate and independent investigations is unwarranted.

The petitioner in *Edwards*, arrested on serious charges, first submitted to interrogation but then requested an attorney. Questions ceased for a while, but when two detectives came to the jail the next morning, a guard advised him that he must talk with them. The petitioner in *Edwards* waived his right to silence and implicated himself in the crime. We reversed the conviction, holding that an accused who expresses his desire to face further questioning with counsel present will not be subject to further interrogation until counsel is made available, unless the accused initiates the exchange himself.

Our ultimate concern in *Edwards*, and in the cases which follow it, is whether the suspect knows and understands his rights and is willing to waive them, and whether courts can be assured that coercion did not induce the waiver. That

concern does not dictate the result reached by the Court today, for the dangers present in *Edwards* and later cases are insubstantial here.

The rule in *Edwards* "was in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Edwards* was." *Oregon* v. *Bradshaw, supra,* at 1044 (plurality opinion). Where the subsequent questioning is confined to an entirely independent investigation, there is little risk that the suspect will be badgered into submission.

The Court reasons that it is "by no means clear" that "police engaged in separate investigations will be any less eager than police involved in only one inquiry to question a suspect in custody." *Ante,* at 686. That misses the point. Unless there are so many separate investigations that fresh teams of police are regularly turning up to question the suspect, the danger of badgering is minimal, and insufficient to justify a rigid *per se* rule. Whatever their eagerness, the police in a separate investigation may not commence any questioning unless the suspect is readvised of his *Miranda* rights and consents to the interrogation, and they are required by *Edwards* to cease questioning him if he invokes his right to counsel. Consequently, the legitimate interest of the suspect in not being subjected to coercive badgering is already protected. The reason for the *Edwards* rule is not that confessions are disfavored but that coercion is feared. The rule announced today, however, prohibits the police from resuming questions, after a second *Miranda* warning, when there is no more likelihood of coercion than when the first interrogation began.

The Court suggests that the suspect may believe his rights are fictitious if he must assert them a second time, but the support for this suggestion is weak. The suspect, having observed that his earlier invocation of rights was effective in terminating questioning and having been advised that further questioning may not relate to that crime, would under-

stand that he may invoke his rights again with respect to the new investigation, and so terminate questioning regarding that investigation as well. Indeed, the new warnings and explanations will reinforce his comprehension of a suspect's rights.

I note that the conduct of the police in this case was hardly exemplary; they reinitiated questioning of respondent regarding the first investigation after he had asserted his right to counsel in that investigation. The statements he gave in response, however, properly were excluded at trial· for all purposes except impeachment. Any sense of coercion generated by this violation which carried over into the questioning on the second offense would of course be taken into account by a court reviewing whether the waiver of *Miranda* rights in the second investigation was voluntary, and the *per se* rule announced today is therefore not necessary to respond to such misconduct.

Allowing authorities who conduct a separate investigation to read the suspect his *Miranda* rights and ask him whether he wishes to invoke them strikes an appropriate balance, which protects the suspect's freedom from coercion without unnecessarily disrupting legitimate law enforcement efforts. Balance is essential when the Court fashions rules which are preventative and do not themselves stem from violations of a constitutional right. *Michigan* v. *Tucker*, 417 U. S. 433, 444 (1974). By contrast with the Fourth Amendment exclusionary rule, for instance, the rule here operates even absent constitutional violation, see *Oregon* v. *Elstad*, 470 U. S. 298, 306–307 (1985), and we should be cautious in extending it. The Court expresses a preference for bright lines, but the line it draws here is far more restrictive than necessary to protect the interests at stake.

By prohibiting the police from questioning the suspect regarding a separate investigation, the Court chooses to presume that a suspect has made the decision that he does not wish to talk about that investigation without counsel present,

although that decision was made when the suspect was un- aware of even the existence of a separate investigation. The underlying premise seems to be that there are two types of people: those who never talk without a lawyer and those who always talk without a lawyer. The more realistic view of human nature suggests that a suspect will want the opportunity, when he learns of the separate investigations, to decide whether he wishes to speak to the authorities in a particular investigation with or without representation.

In other contexts, we have taken a more realistic approach to separate and independent investigations. In *Maine* v. *Moulton*, 474 U. S. 159 (1985), we held that the Sixth Amendment right to counsel barred admission of statements elicited from a criminal defendant by a government informant when the statements related to the charge on which the defendant had been indicted. We were careful to note, however, that the rule would have been otherwise had the statements related to a different charge. "[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." *Id.*, at 180. Similarly, we held in *Michigan* v. *Mosley*, 423 U. S. 96 (1975), that a suspect who had been arrested on charges of committing robbery and who had invoked his right to silence could be questioned later about an unrelated murder, if first read his *Miranda* rights. The Court correctly points out that neither of these cases necessarily control the one before us; *Moulton* involved the Sixth Amendment right to counsel and *Mosley* involved the Fifth Amendment right to silence, while this case involves the Fifth Amendment right to counsel. *Moulton* and *Mosley* nevertheless reflected an understanding that the invocation of a criminal suspect's constitutional rights could be respected, and the opportunities for unfair coercion restricted, without the establishment of a broad-brush

rule by which the assertion of a right in one investigation is automatically applied to a separate and independent one.

In considering whether to extend the *Edwards* rule to this case, the choice is not between holding, as the Court does, that such statements will never be admissible, and holding that such statements will always be admissible. The choice is between the Court's absolute rule establishing an irrebuttable presumption of coercion, and one which relies upon known and tested warnings, applied to each investigation as required by *Edwards* and *Miranda* v. *Arizona*, 384 U. S. 436 (1966), to insure that a waiver is voluntary. The problems to which *Edwards* was addressed are not present here in any substantial degree. Today's rule will neither serve the interest of law enforcement nor give necessary protection to the rights of those suspected of crime. I respectfully dissent.