Brian LIONBERG

v.

John MORAN.

Civ. A. No. 88–0520–T.

United States District Court,
D. Rhode Island.

Dec. 20, 1991.

---

Brian Lionberg, pro se.

Annie Goldberg, Sp. Asst. Atty. Gen., Providence, R.I., for John Moran.

**673**

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is a petition for a writ of habeas corpus in which Brian Lionberg challenges his state court conviction for first degree murder. Specifically, Lionberg asserts that the state court violated his Fifth Amendment rights by allowing the jury to consider incriminating statements he made to police officers after having expressed a desire to consult an attorney. For reasons hereinafter stated, the Court finds that no evidentiary hearing is required and that the petition should be dismissed.

## BACKGROUND

The record reveals that in 1985 Lionberg was convicted of first degree murder for two homicides in Kansas and Rhode Island. He is now serving consecutive life sentences for those convictions. This petition challenges the sentence imposed in connection with the Rhode Island conviction.

Both convictions stem from a chain of events beginning on February 27, 1984, with the brutal stabbing murder in East Greenwich, Rhode Island, of an elderly woman named Mary Burroughs. Shortly after the murder, Lionberg's car was found parked approximately 150 yards from the victim's home, and witnesses reported seeing Lionberg driving Mrs. Burroughs' car. Based on that information, East Greenwich police obtained a warrant for Lionberg's arrest and issued a bulletin for his arrest through the National Crime Information Computer system.

On March 2, 1984, Lionberg murdered a man at a Kansas roadside rest area. The following day, Lionberg, who was still driving Mrs. Burroughs' car, was apprehended by Michael Hover of the Kansas Highway Patrol after a high speed chase. The car Lionberg was driving contained a shotgun that was later linked to the rest area murder and a large buck knife bearing traces of blood and capable of inflicting stab wounds of the type that killed Mary Burroughs.

Patrolman Hover informed Lionberg that he was under arrest for possession of a

stolen car wanted in connection with a homicide and read Lionberg his *Miranda* rights. When they arrived at the Salina County Jail, Hover again advised Lionberg of his *Miranda* rights and ceased asking questions when Lionberg stated that he wanted to speak with an attorney.

Lionberg spent the ensuing weekend in jail during which time he had no communications with either police or an attorney. However, on the following Monday, Hollis Worthen, a correctional officer at the jail, stopped at Lionberg's cell in the course of making his rounds and asked "How ya doing, Brian?" Lionberg answered "I'm all right ... when are they going to extradite me to Rhode Island?" Worthen replied that extradition "takes time" and "I am not even sure if they will extradite you because I don't know what you're wanted for in Rhode Island." Lionberg responded, "[T]hey want me because I killed that old lady and stole her car." Worthen reported that statement to Donald Winsor and Lanny Grosland, agents of the Kansas Bureau of Investigation, who, by then, had linked Lionberg to the Kansas murder.

That afternoon, Winsor and Grosland visited Lionberg's cell, told him that they were investigating the Kansas murder and advised him of his *Miranda* rights. Lionberg signed a written waiver form, said that he did not desire an attorney and denied knowing anything about the Kansas murder. He acknowledged knowing that he was wanted for murder and auto theft in Rhode Island and stated that, at the time he was apprehended, he was heading back to Rhode Island because "I just realized what I did in Rhode Island and I wanted to go home and turn myself in, couldn't handle it anymore." When the agents began to question him about the Kansas murder, Lionberg requested an attorney and the conversation ended.

The next day, Detectives Botelho and Campion of the East Greenwich Police arrived at Lionberg's cell. They told Lionberg that they were investigating the East Greenwich murder and advised him of his *Miranda* rights. Lionberg agreed to talk and confessed to stabbing Mary Burroughs

and taking her car keys. He told them "I was going back to Rhode Island because I wanted to face any penalty that might face me." That conversation was reduced to writing and signed by Lionberg in the presence of a notary public. However, when he was asked about the Kansas murder, Lionberg requested an attorney.

During his trial for the Rhode Island murder, Lionberg's written confession and his prior statements to Officer Worthen and to Agents Winsor and Grosland were admitted into evidence. Lionberg contends that his Rhode Island conviction should be set aside because the confession and his statement to Officer Worthen were obtained in violation of his *Miranda* rights. In addition, he argues that the conviction is invalid because he was not tried within the period of time prescribed by the Interstate Agreement on Detainers Act. R.I.Gen. Laws § 13–13–2 (1981 Reenactment).

## DISCUSSION

### I. *Admissibility of the Inculpatory Statements*

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that inculpatory statements made by an accused who has expressed a desire to consult with counsel are inadmissible unless those statements are part of a conversation initiated by the accused under circumstances indicating a knowing and intelligent waiver of his *Miranda* rights. The purpose of that rule is to protect the accused from the possibly coercive effects of further interrogation after he has asked for the assistance of an attorney. *Oregon v. Bradshaw,* 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983).

◼ An accused is said to "initiate" such a conversation when he evinces a desire to engage in a generalized discussion about the investigation by voluntarily reopening the dialogue with police. *Bradshaw,* 462 U.S. at 1045–46, 103 S.Ct. at 2834–35. The fact that the statements are made as a result of comments by the police does not render then inadmissible unless the police comments constituted "interrogation" or

were reasonably likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

### A. The Statement to Officer Worthen

■ In this case, it is clear that Lionberg initiated the discussion with Officer Worthen regarding the Rhode Island murder. Although Worthen spoke first, he did so only in the course of his duty to periodically inquire about prisoners' needs and he limited himself to asking how Lionberg was doing. It was Lionberg who brought up the subject of extradition and volunteered that he had murdered Mary Burroughs. Worthen did not question Lionberg regarding that crime, and his comments cannot be characterized as reasonably likely to elicit an incriminating response from Lionberg.

In addition, the circumstances indicate that Lionberg's decision to talk to Worthen amounted to a knowing and intelligent waiver of his *Miranda* rights. He had been advised of those rights on two previous occasions by Patrolman Hover and understood them well enough to tell Hover that he did not want to discuss the Kansas murder before consulting an attorney. Moreover, Worthen testified that Lionberg was behaving in a normal manner at the time the statement was made. Finally, there is no suggestion that Lionberg's statement to Worthen was coerced. At the time the statement was made, Lionberg had showered and eaten, and there were no police present. Indeed, the fact that Lionberg previously terminated his conversation with Hover confirms the conclusion that there was no atmosphere of compulsion.

### B. The Confession to East Greenwich Police

■ The admissibility of Lionberg's confession to East Greenwich police presents a more difficult question. The record indicates that Officers Campion and Botelho questioned Lionberg after he had invoked his right to counsel during prior questioning by Agents Winsor and Grosland. It is now clear that when an accused in police custody requests counsel in the context of questioning with respect to one investigation, police may not initiate further interrogation even though it concerns another unrelated investigation. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

■ However, the Supreme Court has held that *Roberson* does not apply retroactively on collateral review. *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990). In *Butler*, the defendant challenged his murder conviction on the ground that a confession made after he had invoked his right to counsel in connection with questioning regarding an assault was admitted into evidence. In decisions that predated *Roberson*, both the state court and the Fourth Circuit rejected Butler's contention that invocation of the right to counsel in connection with an investigation of one crime precluded further police interrogation with regard to investigation of another crime. *See Butler v. Aiken*, 846 F.2d 255 (4th Cir.1988). The Supreme Court affirmed Butler's conviction holding that the new rule created by *Roberson* was not fundamental constitutional law and, therefore, did not apply to prior good faith interpretations of *Edwards*. *Butler*, 110 S.Ct. at 1217–18.

This case is virtually identical to *Butler*. The crimes with which Lionberg was charged were separate and distinct. He invoked his right to counsel only when being questioned about the Kansas murder. He consistently displayed a willingness to talk to both Kansas and Rhode Island authorities about the Rhode Island murder. Furthermore, Botelho and Campion again advised him of his *Miranda* rights before questioning him about that crime. Thus, the state courts' determination that there had been no violation of *Edwards* was consistent with the law as it existed before *Roberson* and did not result in any violation of Lionberg's constitutional rights.

### II. *Harmless Error*

■ Even if one accepted Lionberg's contention regarding the admissibility of

the statements in question, the result would be unchanged. Except for a few fundamental rights, the violation of which are considered prejudicial *per se*, alleged errors in the conduct of criminal trials do not provide a basis for habeas corpus relief if they were harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). The harmless error rule has been applied specifically to confessions allegedly admitted in violation of a defendant's Fifth and/or Sixth Amendment rights. *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Bryant v. Vose*, 785 F.2d 364, 367 (1st Cir.), *cert. denied*, 477 U.S. 907, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986).

■ In determining whether admission of a confession is harmless, the Court must assess its impact "in the context of other evidence presented." *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). The pertinent inquiry is whether it is clear beyond a reasonable doubt that the jury would have convicted the defendant absent the confession. *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

■ In this case, the answer is an emphatic yes. Even without the two statements in question, the evidence of Lionberg's guilt is overwhelming. Shortly after the murder, his car was found parked a short distance from Mrs. Burroughs' house. Furthermore, he fled Rhode Island driving the victim's car. In addition, he had in his possession a knife having a blade that matched the fatal stab wounds and which bore traces of blood. Finally, in a statement the admissibility of which is not challenged, Lionberg admitted to Winsor and Grosland that "I just realized what I did in Rhode Island and I wanted to go home and turn myself in, couldn't handle it anymore." Those facts were more than sufficient to support Lionberg's conviction; and therefore, even if it had been error to admit the statements in question, such error was harmless.

## III. *Interstate Agreement on Detainers Act*

■ Lionberg also contends that his Rhode Island conviction should be overturned because he was not tried within the 180 day period prescribed by the Interstate Agreement on Detainers Act ("IAD"). R.I.Gen.Laws § 13–13–2 (1981 Reenactment). It is unnecessary for this Court to consider whether the provisions of that statute were violated because any such violation would not be of constitutional dimension.

Violation of a state statute does not provide a basis for federal habeas corpus relief unless it amounts to a " 'fundamental defect which inherently results in a complete miscarriage of justice.' " *Fasano v. Hall*, 615 F.2d 555, 557 (1st Cir.1980) (quoting *Hill v. United States*, 368 U.S. 424, 429, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). The First Circuit has held that an alleged failure to comply with the time limits contained in the IAD does not rise to that level and, therefore, does not present a cognizable constitutional claim for habeas corpus purposes particularly when it has no bearing on the petitioner's guilt or innocence. *Fasano*, 615 F.2d at 557–58. In this case, there is no indication that the alleged delay affected the verdict. Furthermore, the record indicates that such delay was caused by Lionberg and his attorney. Consequently, any such delay cannot provide a basis for habeas relief.

## CONCLUSION

For all of the foregoing reasons, the petition for a writ of habeas corpus is denied and dismissed.

IT IS SO ORDERED.