**Ralph Franklin WILLIAMSON,**
**Petitioner–Appellee,**

v.

**Al C. PARKE, Warden, Kentucky State**
**Reformatory, Respondent–**
**Appellant.**

No. 91–5670

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 27, 1992.

Decided May 7, 1992.

Rehearing and Rehearing En Banc
Denied June 22, 1992.

Frank W. Heft, Jr. (argued, briefed), Office of Jefferson District Public Defender, Louisville, Ky., for petitioner-appellee.

Denise Garrison McElvein (argued, briefed), Chris Gorman, Atty. Gen., Office of the Atty. Gen. of Kentucky, Frankfort, Ky., for respondent-appellant.

Before: BOGGS and NORRIS, Circuit Judges; and CONTIE, Senior Circuit Judge.

BOGGS, Circuit Judge.

Warden Al C. Parke appeals the district court's grant of a writ of habeas corpus to Ralph Franklin Williamson. For the reasons stated below, we reverse the district court's grant of the writ.

## I

On June 19, 1985, a man robbed the Milo Beauty Supply store in Jefferson County, Kentucky. One month later, the man robbed the store again. On September 4, 1985, this same man also robbed the Otto Drug Store in Jefferson County.

On September 5, 1985, Williamson was arrested in Jefferson County on traffic charges. The arresting officer advised him of his *Miranda* rights. On September 6, Williamson was arraigned in Jefferson District Court on the traffic charges and other outstanding warrants. The district judge asked Williamson if he had a lawyer. Williamson responded: "No sir, I have been trying to say if I can get out I can get a lawyer, I've got a good job." Williamson wanted the judge to reduce his bond. As another defendant was being brought in for arraignment, the district judge stated "Motion for PD [public defender] is overruled on Mr. Williamson." Thus, the judge apparently found that Mr. Williamson was not entitled to a public defender. However, Mr. Williamson had not requested representation by a public defender.

After his arraignment, Williamson was returned to jail. Later that day, he became a suspect in the drug store robberies. One of the investigating officers obtained an order from Jefferson County District Judge Allen Farber releasing Williamson from jail for the express purpose of appearing in a lineup. The robbery investigation was completely unrelated to the charges on which Williamson had been arraigned earlier that day.

Judge Farber admonished the detective to be certain that Williamson was shown the order before he was placed in the lineup. The detective contacted the court that had arraigned Williamson and was advised that Williamson's motion for a public defender had been denied. The detective then went to the jail, advised Williamson of his rights, and presented him with the court order allowing him to be in the lineup. Williamson waived his right to have an attorney present at the lineup by signing the bottom of the court order. The detective also tried to take the additional step of advising the public defender's office that Williamson had consented to appear in a lineup. The detective reached the Public Defender's answering service, but no one returned his call. Prior to the lineup, Williamson was again advised of his *Miranda* rights and he was given the opportunity to use the telephone. Williamson stated that he understood his rights and signed a waiver of rights form.

At the lineup, two witnesses positively identified Williamson as the man who had robbed their respective drug stores. After the lineup, officers advised Williamson the he would be charged with three counts of first-degree robbery. Officers again advised Williamson of his *Miranda* rights. He was again allowed to use the telephone. Williamson signed another waiver of rights form and participated in an interview recorded on audio tape. The tape reveals that Williamson was again given his *Miranda* warnings before being asked any questions. Williamson confessed to the three robberies. He was not under the influence of drugs at the interview, nor was he coerced into making the statement.

On September 7, 1985, Williamson was arraigned on the robbery charges and a public defender was appointed to represent him on those charges. Defense counsel's motion to suppress the taped confession was denied. On January 9, 1987, Williamson entered a plea of guilty to four counts of second-degree robbery and to one count of being a persistent felony offender. He was sentenced to 15 years' imprisonment. Williamson reserved the right to appeal his conviction.

The Kentucky Court of Appeals reversed the conviction, holding that the lineup and

the confession were unlawful. The court ruled that Williamson's fifth and sixth amendment rights had been violated by the police investigation of the robbery. The Kentucky Supreme Court reversed the appeals court and reinstated the convictions. The Kentucky Supreme Court found that Williamson had never requested counsel at his arraignment on the traffic charges. The court pointed out that the only mention of appointed counsel was in the judge's comment that the motion for a public defender was overruled. The court held that no violation of Williamson's rights had occurred since he had not requested counsel.

The United States Supreme Court denied Williamson's petition for a writ of certiorari. Williamson then filed a petition for a writ of habeas corpus in federal court. On May 22, 1991, the United States District Court for the Western District of Kentucky granted Williamson's petition. The court concluded that Williamson *had* expressed a desire for representation by counsel and that this request was sufficient to render inadmissible *any* incriminating statements he made subsequently, regardless of the numerous *Miranda* warnings and the waivers of rights. It reasoned that because Williamson had been in continuous police custody since the initial hearing, all of the waivers were tainted. On June 18, 1991, however, the district court entered an order placing the parties on notice that if jurisdiction of this case were returned to the district court it would reconsider its ruling in light of the Supreme Court's June 13, 1991 ruling in *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). The court noted that since its ruling the Supreme Court had "squarely addressed the issue upon which the conditional writ was based." Memorandum Opinion at 16, 1991 WL 129217.

## II

■ This court conducts a de novo review of a habeas corpus proceeding in the district court to determine whether the petitioner received a fundamentally fair trial. *Lundy v. Campbell,* 888 F.2d 467, 469–70 (6th Cir.1989), *cert. denied,* 495 U.S. 950,

110 S.Ct. 2212, 109 L.Ed.2d 538 (1990). As the district court's invitation to reconsider its ruling suggests, the resolution of this case turns on the recent Supreme Court clarification of sixth amendment law in *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). *McNeil* involved the arrest of Paul McNeil for armed robbery in West Allis, Wisconsin, a suburb of Milwaukee. McNeil was advised of his *Miranda* rights and refused to answer any questions. At his arraignment, a public defender was appointed to represent McNeil on the robbery charges. Later that evening, a detective visited McNeil in jail. The detective was investigating a murder, attempted murder, and armed burglary in the town of Caledonia, Wisconsin. McNeil was a suspect. The detective advised McNeil of his *Miranda* rights and McNeil signed a form waiving those rights. In the first interview, McNeil did not deny knowledge of the Caledonia crimes, but said he had not been involved.

The detective returned two days later with two other detectives from Caledonia. The detectives again advised McNeil of his *Miranda* rights and gave McNeil a waiver form. McNeil initialed each of the warnings and signed the form. This time, McNeil admitted his involvement in the Caledonia crimes and also implicated two other men. A statement was prepared and McNeil signed it.

After questioning one of the men implicated by McNeil, detectives returned two days later to question McNeil again. McNeil was again given *Miranda* warnings and he again signed a waiver form. McNeil acknowledged that he had lied about the other man's involvement in the Caledonia crimes and provided another account of what had happened. Detectives prepared another written statement, which McNeil read and signed. McNeil was then charged with the Caledonia crimes. His pretrial motion to suppress his various statements to police was denied and he was convicted of second-degree murder, attempted first-degree murder, and armed robbery.

McNeil appealed, arguing that his courtroom appearance in the West Allis crimes constituted an invocation of his *Miranda* rights for all purposes and that any subsequent waiver of those rights was invalid. Since the Wisconsin Supreme Court had never addressed the issue, the Wisconsin Court of Appeals certified the following question to that court: "Does an accused's request for counsel at an initial appearance on a charged offense constitute an invocation of his fifth amendment right to counsel that precludes police interrogation on unrelated, uncharged offenses?" The Wisconsin Supreme Court answered "no" and the United States Supreme Court affirmed.

The Supreme Court first recognized that once the *sixth* amendment right to counsel for a particular crime has attached and has been invoked, any subsequent waiver during a police-initiated custodial interview is ineffective. *McNeil,* 111 S.Ct. at 2207. The court held that McNeil had indeed invoked the sixth amendment right to counsel with respect to the West Allis robberies, with which he had formally been charged. The Court pointed out however, that the sixth amendment right to counsel is offense specific: "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced...." *Ibid.* And just as the right is offense specific, so also its effect of invalidating all subsequent waivers in police-initiated interviews is offense specific. The court stated that the police have an interest in investigating new or additional crimes after an individual is formally charged with one crime. To exclude evidence pertaining to charges as to which the sixth amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. Incriminating statements pertaining to other crimes, as to which the sixth amendment right has not yet attached, are, thus, admissible at a trial of those offenses. *Id.* at 2207–08.

The court then went on to address McNeil's argument based on a fifth amendment *Miranda* notion of the right to counsel. Basically, McNeil argued that his invocation of the sixth amendment right to counsel in his first offense was also an invocation of the non-offense-specific *Miranda* right. Specifically, McNeil relied on *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held that once a suspect asserts the *Miranda* right to counsel, he may not be approached for further investigation until counsel has been made available to him and such counsel is present at further interrogations by police. The *Edwards* rule is not offense-specific: once a suspect invokes the *Miranda* right for one offense, he may not be questioned regarding any other offense. *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). The Supreme Court held, however, that McNeil had only asserted the sixth amendment right to counsel with regard to the West Allis crimes. He had subsequently and effectively waived his *Miranda* rights with regard to the Caledonia crimes. His statements regarding those crimes did not need to be suppressed and, therefore, his conviction was affirmed.

■ As the district court in this case has ostensibly recognized, the *McNeil* fact pattern is almost four-square with the fact pattern in this case. This case is a little more complicated because there is an argument over whether Williamson ever invoked even his sixth amendment right to counsel concerning the traffic charges. With regard to that dispute, the Warden argues that the district court erred when it refused to accord the Kentucky Supreme Court's findings of fact the presumption of correctness they are due under 28 U.S.C. § 2254(d). The Kentucky Supreme Court had concluded that the statement made by Williamson at his first arraignment did not constitute a request for counsel. The district court admitted that Williamson had not made a specific request for an attorney but chose to construe the comment by the judge overruling a motion for a public defender as evidence that such a motion had indeed been made. However, given *McNeil,* that dispute is moot. Even if he did invoke his sixth amendment right to

counsel in the traffic offense arraignment, Williamson subsequently effectively waived his *Miranda* rights in the investigation of the drug store robberies.

■ Williamson argues that *McNeil* should not apply here since in this case Williamson was not actually appointed counsel whereas McNeil received representation at his preliminary hearing on the unrelated charge. However, there does not appear to be any support in logic or in case law for such a distinction. Further, Williamson argues that *McNeil* is a new constitutional rule that should not be applied retroactively in this case under the standard set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny. However, the *McNeil* opinion was based entirely on existing law regarding the distinction between the sixth amendment's guarantee of counsel and the *Miranda–Edwards–Roberson* rule founded on the fifth amendment's protection against self-incrimination. The only question in *McNeil* was whether the accused's request for counsel at an initial appearance for a particular charge constituted an invocation of the sixth amendment right to counsel or if it was an invocation of the *Miranda* right. The law governing the consequences of either the sixth amendment right or the fifth amendment *Miranda* request was settled. The court was faced with determining which type of invocation had been made and then applying the relevant legal standard. It was, in fact, McNeil who sought an extension of the law to make his sixth amendment invocation non-offense specific. *McNeil*, 111 S.Ct. at 2208. He contended that "although he expressly waived his *Miranda* right to counsel on every occasion he was interrogated, those waivers were the invalid product of impermissible approaches, because his prior invocation of the offense-specific Sixth Amendment right with regard to the West Allis burglary was also an invocation of the non-offense-specific *Miranda–Edwards* right." *Ibid.* The

Supreme Court expressly refused to extend or change the law in this area.[1] *Id.* 111 S.Ct. at 2211.

In his concurrence, Judge Contie argues that *McNeil* constitutes new law. He relies on *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990), and argues that if appellate courts are split on an issue, then the issue must be susceptible to debate among reasonable minds and, therefore, must constitute "new" law for purposes of the *Teague* analysis. We do not agree that *Butler* can be read to support such a sweeping statement. The fact that a "circuit split" exists does not automatically make the Supreme Court's resolution of the split "new" law, even under *Teague* and its progeny. For instance, it is certainly true that sometimes one or more circuits may simply misinterpret or misapply existing law and create a disagreement with other circuits on an issue. If the Supreme Court hears the case and reaffirms the proper interpretation or application of existing law and brings the erring circuit or circuits into line with the correct view of the law, the Court has not necessarily created new law. In other words, the Supreme Court does not grant certiorari on issues only to create new law, but at times to enforce existing law. The proposition that every case the Supreme Court decides in which circuits disagree constitutes new law is simply too broad to be supportable, even under the language of *Butler*.

If the expansive interpretation of *Butler* is correct, then by its own terms it cannot be limited only to those cases where the Supreme Court harmonizes disagreements between or among circuits. If any rule that is "susceptible to debate among reasonable minds" is *per se* new under *Teague*, then the Court would always be establishing a new rule whenever, at a minimum, a dissent occurred either in an opinion of the Court itself or in any opinions of the lower courts. This is clearly not the case.

---

1. The Court stated: " 'This Court is forever adding new stories to the temples of constitutional law, and the temples have a way of collapsing when one story too many is added.' *Douglas v.*

*Jeanette*, 319 U.S. 157, 181, 63 S.Ct. 877, 889, 87 L.Ed. 1324 (1943) (opinion of Jackson, J.). We decline to add yet another story to *Miranda*." *McNeil*, 111 S.Ct. at 2211.

As *McNeil* itself indicates, when a majority of the Supreme Court relies upon existing law and arrives at a decision in harmony with past precedent, then no new rule of law is established.

We do recognize, along with Judge Contie, that there are several potential grounds for resolving this case, all of which would lead this court to reverse the district court's grant of the habeas corpus writ. First, we could uphold the Kentucky Supreme Court's determination that Williamson never invoked *any* right to counsel in this case. It seems clear that the arraigning judge merely misunderstood (or perhaps was not listening to) Williamson when the judge ruled on a motion for a public defender that was never made. Second, we agree with Judge Contie that "even if this court were barred from using *McNeil* and could use only case law in existence at the time of the Kentucky Supreme Court's decision in 1989, ... the district court's decision can be reversed on the basis of this court's decision in *Boles v. Foltz*, 816 F.2d 1132 (6th Cir.1987)." However, Judge Contie's statement only confirms the fact that *McNeil* was simply a restatement and application of law existing at the time this case was decided and, as such, can be applied retroactively. Therefore, the district court's grant of the writ of habeas corpus was error under the law as it existed at the time of this case and as confirmed by the more recent restatement of that law in the *McNeil* opinion of the Supreme Court.

Finally, we note Judge Contie's suggestion, in his concurrence, that even new law could be applied retroactively without offending the principle of *Teague* and its progeny if it is used to uphold a state court's decision or, in other words, to benefit the government. In that view, then, "new" rules of law could almost never be used to grant a petition for a habeas writ but could always be used to defeat a petition that would have been granted based on the law as it existed at the time of the trial. Such a rule would seem to be a type of double-standard that would pull the rug out from under habeas petitioners with legitimate claims whenever a court handed down a "new" and unanticipated decision

that could retroactively defeat the claim. On the other hand, since the "new" law is the true law, by hypothesis, why should the state be punished for applying it? In any event, this issue presents many interesting and difficult questions that we will leave for another day.

In sum, while we recognize several potential grounds for reversing the district court, we choose to rely on *McNeil*, which we apply retroactively because it merely clarifies and applies existing law.

## III

We REVERSE the judgment of the district court granting a writ of habeas corpus and dismiss the petition. *Lundy v. Campbell*, 888 F.2d at 481.

CONTIE, Senior Circuit Judge, concurring.

I agree with the majority that the opinion of the district court should be reversed. However, I disagree with the majority's conclusion that *McNeil v. Wisconsin*, —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) does not constitute a new rule of law under *Teague v. Lane*. Although the Supreme Court stated in *McNeil* that it would not further extend *Miranda*, 111 S.Ct. at 2211, this statement does not indicate whether *McNeil* constitutes a new rule of law for purposes of a *Teague v. Lane* analysis. The test for a new rule of law as defined by *Teague* is stated in *Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990), in which the Supreme Court indicated that a legal ruling sought by a federal habeas petition will be deemed "new" as long as the correctness of the rule is susceptible to debate among reasonable minds. *Id.* 110 S.Ct. at 1217–18. It is clear that the Supreme Court's holding in *McNeil* was susceptible to debate among reasonable minds, because previously the appellate courts were split on the issue of whether the invocation of a Sixth Amendment right to counsel in one offense constituted the invocation of a Fifth Amendment right to counsel in an unrelated offense. The courts in *United States v. Wolf*, 879

F.2d 1320, 1322–23 (6th Cir.1989), *Wilson v. Murray,* 806 F.2d 1232, 1235 (4th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 197, 98 L.Ed.2d 149 (1987), and *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 122–24 (7th Cir.), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987) extended the *Miranda* right to counsel to unrelated offenses once a Sixth Amendment right to counsel had been invoked, whereas the courts in *Butler v. Aiken,* 846 F.2d 255, 258–59 (4th Cir.1988) and *Boles v. Foltz,* 816 F.2d 1132, 1135 (6th Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987) declined to extend *Miranda.* Thus, under the standard of *Butler v. McKellar, McNeil* announced a new rule of law because it was susceptible to debate among reasonable minds about how expansively the *Miranda* and *Edwards* line of cases should be interpreted.[1]

However, in the present case, petitioner's *Teague v. Lane* argument cannot prevail because *McNeil* is not being used retroactively in the way prohibited by the *Teague* rule. This court is not applying *McNeil* retroactively to overrule a decision of the Kentucky Supreme Court which is in conflict with *McNeil.* The Kentucky Supreme Court made a factual determination that petitioner Williamson never requested counsel. The state court did not reach the *McNeil* issue of what a request for counsel means (if it had occurred) in terms of the Fifth and Sixth Amendments. In other words, the Kentucky Supreme Court never considered the issue decided in *McNeil.* This court's use of *McNeil* to reverse a decision of the district court on an issue the state court never considered does not offend federal-state comity or finality concerns—the concerns which were the impetus behind the adoption of the *Teague* rule. The rationale for the *Teague* rule is that "[s]tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court [later] discover ... new constitutional commands" invalidating their final decision. *Butler v. McKellar,* 110 S.Ct. at 1217, quoting *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). The Supreme Court decided that a prohibition against applying new rules of constitutional law on collateral review was necessary to "validate[ ] reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Id.*

In the present case, this panel is not using *McNeil* retroactively in a way that offends federal-state comity concerns to invalidate the final decision of the Kentucky Supreme Court, which did not reach the issue presented in *McNeil.* This panel is using *McNeil* to invalidate the district court's interpretation of existing precedent. Therefore, the rule of *Teague v. Lane,* which addresses a federal appellate court's review of a state court's conviction, does not apply in the present case, which concerns instead only a federal appellate court's review of a federal district court's decision. Because this court is using the Supreme Court's decision in *McNeil* to overrule the district court's decision on an issue never considered by the Kentucky state court, this court is not barred by the rule of *Teague v. Lane* from applying *McNeil* retroactively to the present case.[2]

---

1. I disagree with the majority that I am suggesting that every time a dissent occurs, an issue "would be susceptible to debate among reasonable minds." I believe that *McNeil* is the type of case contemplated by the statement made by the Supreme Court in *Butler v. McKellar,* because of the wide divergence in opinion on this issue among the appellate courts.

2. I do not mean to suggest that a new law can be applied retroactively without offending the principle of *Teague* if it is used to uphold a state court's decision to benefit the government. I agree with the majority that such a rule would create an unfair double-standard. I instead suggest that if a new rule of law involves an issue *not decided by the state court,* but involves an issue used by a federal district court to grant or deny habeas, the appellate court may apply the new rule to reverse or affirm the decision of the district court *on an issue the state court never considered.* I disagree with the majority that this case presents the issue of whether a new rule may be used retroactively to uphold a state court's decision. In the present case, *McNeil* is not being used retroactively to uphold the state court's decision that no request for counsel was made. It is being used retroactively to reverse the district court, which found that a request for counsel was made, which barred further inquiry

In the alternative, even if this court were barred from using *McNeil* and could use only case law in existence at the time of the Kentucky Supreme Court's decision in 1989, I believe that the district court's decision can be reversed on the basis of this court's decision in *Boles v. Foltz*, 816 F.2d 1132 (6th Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987). In *Boles*, this court found that the defendant had invoked his Sixth Amendment right to counsel because the ordinary meaning of the petitioner's statement about hiring an attorney was that he wished to have his attorney present at the preliminary hearing for a larceny offense. *Id.* at 1135. The *Boles* court held that this statement did not invoke his Fifth Amendment right to counsel for all purposes and did not invoke his right to have counsel present during interrogation about an unrelated offense. *Id.* The facts of the present case are similar to that of *Boles*.[3] Even if petitioner Williamson's statement about hiring an attorney meant that he wished to have counsel present for the traffic offenses, this statement did not constitute a Fifth Amendment request for counsel for unrelated offenses. Therefore, the district court can be reversed by applying the relevant Sixth Circuit precedent articulated in *Boles v. Foltz*.

To conclude, I believe that the Supreme Court's decision in *McNeil* constitutes a new rule of law under *Teague v. Lane*. However, the rule of *Teague v. Lane* does not bar application of the Supreme Court's decision in *McNeil* to the facts of the present case, because *McNeil* is not being used retroactively to reverse the decision of the state court, which never considered the issue presented in *McNeil*. Even if *Teague* were to preclude the use of *McNeil*, the district court can be reversed on the basis of *Boles v. Foltz*, which was in exist-

ence at the time of the Kentucky Supreme Court's final decision and is not being applied retroactively. Even if petitioner Williamson invoked his Sixth Amendment right to counsel for the traffic offenses, he did not invoke his Fifth Amendment right to counsel for the robbery offenses, but voluntarily waived them. Therefore, the results of the line-up and confession were admissible into evidence, and petitioner's habeas petition should be denied.

on unrelated offenses. This is an issue never reached by the state court.

**3.** In *United States v. Wolf*, 879 F.2d 1320 (6th Cir.1989), this court held that when defendant Wolf requested an attorney after she had been read the charges against her at the arraignment hearing on theft charges, she could not be interrogated concerning unrelated murder charges. *Id.* at 1322–23. The *Wolf* court distinguished *Boles*, because *Boles* merely concerned an ex-

change setting up a hearing. *Id.* at 1323. The present case is closer in its facts to *Boles* than to *Wolf*, because petitioner Williamson's statement was made as part of an exchange setting up a formal arraignment, which was postponed for ten days. Therefore, *Boles*, not *Wolf*, is the controlling precedent. Moreover, *Wolf* has now been overruled by the Supreme Court's decision in *McNeil*.