11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Troy Wayne Cross

Appellant

Vs.                   No.
11-02-00225-CR B Appeal from Taylor County

State of Texas

Appellee

 

The jury
found Troy Wayne Cross guilty in a multiple count indictment of three offenses:
(1) burglary of a habitation with intent to commit aggravated sexual assault;
(2) aggravated sexual assault; and (3) aggravated assault.  The jury further found that the enhancement
allegations in the indictment were true and that appellant used and exhibited a
deadly weapon, a knife, while committing each offense.  The jury assessed appellant=s punishment at imprisonment for life for
each conviction and, in addition to imprisonment, a $10,000 fine for the
aggravated assault conviction.

We affirm
the trial court=s judgments as to the aggravated sexual
assault and aggravated assault offenses. 
We reverse the trial court=s judgment as to the conviction for burglary with intent to commit
aggravated sexual assault.

The record
shows that appellant unlawfully entered the victim=s apartment and, while using a knife, stabbed
and sexually assaulted the victim.  The
sufficiency of the evidence is not challenged.

Appellant
contends in his first issue that the trial court erred in denying his motion to
suppress and in permitting the State to introduce into evidence two written
statements signed by appellant.  The
first statement is dated November 23, 2001, and the second statement is dated November
26, 2001.  Both statements were made to
Detective Joe Tauer.








Appellant
argues that both statements were inadmissible because they were made after he
had invoked his right to counsel. 
Counsel had not been provided, and counsel was not present when
appellant made and signed the two statements. 
See Minnick v. Mississippi, 498 U.S. 146 (1990).  The State responds that appellant did not
make a clear and unambiguous request for counsel and, further, that appellant
waived his right to counsel because appellant, not Detective Tauer, Ainitiated@ the discussion regarding the facts surrounding the investigation.  Following a pretrial suppression hearing,
the trial court dictated into the record the court=s express findings that both statements were
freely and voluntarily given and that appellant had waived his right to
counsel.[1]

The victim
testified that, around 5:00 a.m. on November 23, 2001, following an all-night
beer drinking party at her apartment, she heard a knock at her door.  As the victim went to the door to unlock it,
appellant unlocked the door with a key and broke the door chain.  Appellant grabbed the victim and stabbed her
in the back with a knife that belonged to the victim.  Appellant tied the victim=s hands behind her back and then forced the victim to perform oral sex
on him.  Appellant was in the victim=s apartment for approximately one hour.  At some point, appellant bit the victim.  Appellant was unable to obtain an
erection.  The victim testified that,
while appellant was forcing her to perform oral sex, he told her several times
that if she tried anything he would kill her. 

The
medical doctor who treated the victim for the stab wound testified that the
knife wound could have resulted in serious bodily harm or death.

Chester
Wallace testified that appellant came to his apartment, which was in the same
apartment complex as the victim=s apartment, at around 7 or 8 a.m. on November 23.  Appellant was in the apartment about 10
minutes before Wallace heard sirens and 
observed several police officers at the apartment complex.  Appellant left Wallace=s apartment. 
Shortly thereafter, police officers came to the apartment and, with
Wallace=s permission, searched the apartment.  The keys to the victim=s apartment and the knife that was used to
stab the victim were found by the police under a couch in Wallace=s apartment. 
The DNA evidence showed that the victim=s blood was found on the sweat pants worn by appellant at the time of
his arrest.








In the
statement dated November 23, 2001, appellant stated that, on the night of
November 22, 2001, he and two other males were drinking beer in an apartment
complex parking lot when they met two females.[2]  Appellant said that the females were a Amother@ and Adaughter@ who were both drunk.  The
daughter was about 19 or 20 years old. 
Later that night, between 10:00 p.m. and 12:00 a.m., appellant went to
the females= apartment. 
The people there were sitting around drinking beer and smoking dope. The
daughter wanted to give appellant Ahead@ for some Arock,@ so appellant let her.  Appellant stated that he gave her a Ahit@ but that he was unable to obtain an erection.  Appellant stated that he passed out on the
couch and that, when he woke up, everybody was gone.  He was awakened by the Amother@ kicking him.  Appellant stated that he and the Amother@ were hitting each other and that he Amight have stabbed her,@ but he did not know where the Aknife came from.@ 
Appellant stated that he got mad and: 
A[W]hat happened after that I don=t know.@  Appellant stated that he left
the apartment and went to AChester=s@ apartment.  When he saw police
officers arriving at the apartment complex, appellant got Ascared@ and Atook off.@  Appellant stated that he Adidn=t rape her@ and
that he Adidn=t break in.@

On
November 26, 2001, three days after the first statement was given by appellant
to Detective Tauer, appellant signed a second statement which was also given to
Detective Tauer.  In that statement,
appellant said that, while he was at the party at the apartment, he found the
keys to the apartment on a couch and took them.  He said that he took the keys because he intended to return to
the apartment and steal the stereo.  He
further stated that, around 5:00 or 6:00 a.m. on November 23, 2001, he went to
the apartment and unlocked the door. 
The door chain was latched, and he pushed the door in.  He told the victim that he wanted her
property; and, when she put up a fight, he might have Abit@ her.  Appellant said that he
went to the apartment to rob the victim and that he was not thinking straight
because he had been drinking and was on Acrack@ and Aspeed.@

The court
in McCarthy v. State, 65 S.W.3d 47, 51 (Tex.Cr.App.2001), recently stated the
appropriate rules to be followed:

Once a
suspect has invoked the right to counsel during questioning by law enforcement,
the Fifth Amendment right to counsel has been invoked and all interrogation by
the police must cease until counsel is provided or the suspect reinitiates
conversation.

 

                                                           *    *   
*

 








[T]he Edwards [v. Arizona, 451 U.S.
477 (1981)] rule acts as a Aclear and unequivocal@ guideline to law enforcement precisely because it is Arelatively rigid.@  See
Arizona v. Roberson, 486 U.S. 675, 681, 108 S.Ct. 2093, 100 L.Ed.2d 704
(1988).  When a person subjected to
custodial interrogation unambiguously invokes the right to counsel, all
questioning must cease.  Interrogation
may not be reinitiated by the police at any time or in any manner unless the
person has consulted counsel.  

The
court qualified the above-quoted language by stating in Footnote No. 6:  AOf course, if the arrestee reinitiates the conversation, the Edwards
rule is satisfied.@  McCarthy v. State, supra at 51 n.6.

At about 8:00
a.m. on November 23, 2001, Abilene Patrol Sergeant Jmeyer Barbian, who was
searching for the sexual assault suspect, discovered appellant hiding in the
back of a pickup.  Sergeant Barbian
testified at the suppression hearing that he Mirandized[3]
appellant and that, as he gave appellant the last of his Miranda
warnings, appellant said:  AI am not saying anything until I get my
lawyer.@ 
Appellant was then transferred to the Law Enforcement Center.  We hold that appellant clearly invoked his
right to counsel under the Fifth Amendment to the U.S. Constitution.  Miranda v. Arizona, supra; Lucas v. State,
791 S.W.2d 35 (Tex.Cr.App.1989).








We now
turn to the issue of who Ainitiated@ the
conversation between appellant and Detective Tauer that led to the statement on
November 23.  Detective Tauer testified
at the suppression hearing that he first met appellant around 9:00 a.m. on
November 23.  The victim was at the
hospital, and a Aone-on-one@ or Ashow up@ was needed.  Detective Tauer
and other officers transported appellant to the hospital where the victim
identified appellant as the person who had committed the sexual assault.  Appellant was then transferred back to the
Law Enforcement Center.  Detective Tauer
stated that he read appellant his Miranda rights and told appellant he
was going to get some Apersonal@ information from him.  Detective Tauer testified that he told
appellant that he was not going to question him because he had been told that
appellant had invoked his right to an attorney.  Detective Tauer stated that appellant Agot upset@ and told the detective that he Adidn=t want to talk to the patrol officer@ but that he did want Ato talk to a detective.@  The
detective stated that appellant was Avisibly upset@ and
was Amad@ because Detective Tauer was not going to talk to him.  The detective then telephoned his
supervisor; the supervisor advised Detective Tauer that appellant could Ainvoke his rights to an attorney@ and that a person can also Auninvoke his rights.@  The
supervisor advised Detective Tauer that, if appellant wanted to talk to
Detective Tauer, then Detective Tauer should talk with him.  Detective Tauer testified that he was Aabsolutely@ sure that appellant was the one who initiated the questioning.  On cross-examination at the suppression
hearing, the prosecutor asked appellant the following question regarding his
conversation with Detective Tauer:  A[H]e wasn=t going to talk to you and you wanted to tell him what happened, isn=t that correct.@  Appellant answered:  AI can=t say yes or no to that.@

In Oregon
v. Bradshaw, 462 U.S. 1039 (1983), the Court said:

We think
the Oregon Court of Appeals misapprehended the test laid down in  Edwards.   We did not there hold that the Ainitiation@ of a
conversation by a defendant such as respondent would amount to a waiver of a
previously invoked right to counsel;  we
held that after the right to counsel had been asserted by an accused, further
interrogation of the accused should not take place Aunless the accused himself initiates further
communications, exchanges, or conversations with the police.@   

 

                                                           *    *   
*

 

But even
if a conversation taking place afer the accused has Aexpressed his desire to deal with the police
only through counsel,@ is
initiated by the accused, where reinterrogation follows, the burden remains
upon the prosecution to show that subsequent events indicated a waiver of the
Fifth Amendment right to have counsel present during the interrogation.

 

At a suppression
hearing, the trial court is the trier of fact; it assesses the witnesses= credibility and the weight to be given their
testimony.  State v. Ballard, 987 S.W.2d
889, 891 (Tex.Cr.App.1999).  As long as
the trial court=s findings are supported by the record, we
afford almost total deference to its findings of historical fact.  Furthermore, we defer to a trial court=s application of law to fact rulings if they
turn on an evaluation of credibility and demeanor.  Guzman v. State, 955 S.W.2d 85 (Tex.Cr.App.1997).

The Court
in Bradshaw held that the defendant Ainitiated@
further Aconversations@ when the defendant asked an officer: 
AWell, what is going to happen to me now?@  When
discussing the meaning of Ainitiate,@ the
Court said:








Although ambiguous, the
respondent=s question in this case as to what was going
to happen to him evinced a willingness and a desire for a generalized
discussion about the investigation;  it
was not merely a necessary inquiry arising out of the incidents of the
custodial relationship.  It could
reasonably have been interpreted by the officer as relating generally to the
investigation.    

                                                                                                                                                

We hold
that appellant initiated further communication with Detective Tauer regarding
the subject matter of the investigation. 
Appellant=s remarks represented a desire on appellant=s part to open up a more generalized
discussion with Detective Tauer relating directly or indirectly to the
investigation.  Detective Tauer did not
initiate further conversation with appellant when the detective asked appellant
routine personal questions; the detective told appellant that he would not be
asking appellant any questions concerning the incident being investigated.  The next inquiry is whether a valid waiver
of the right to counsel occurred after appellant initiated further conversation
regarding the facts surrounding the incident. 
The detective stated that, before he gave appellant his Miranda
warnings, appellant had recited all of the Miranda rights to the
detective except for the right to terminate the interview.  Detective Tauer testified that, before he
interrogated appellant,  he carefully
went over each of the Miranda warnings with appellant.

The
preprinted part of the written statement contained the Miranda
warnings.  The statement expressly
states that appellant was warned by the person to whom the statement was made
(Detective Tauer); that appellant had the right to have a lawyer present to
advise him prior to and during any questioning; and that, if appellant was
unable to employ a lawyer, appellant had the right to have a lawyer appointed
to advise him prior to and during any questioning.  Detective Tauer testified that appellant read the rights Aout loud@ back to the detective before appellant signed the statement.  After reviewing the totality of the
circumstances, we hold that appellant knowingly and voluntarily waived his
right to counsel.  The trial court did
not err in denying appellant=s motion to suppress and in permitting the State to introduce into
evidence appellant=s
first statement, the one which is dated November 23, 2001.  Oregon v. Bradshaw, supra; Janecka v. State,
739 S.W.2d 813, 829 (Tex.Cr.App.1987).








We now
turn to appellant=s
second written statement.  Detective
Tauer interviewed the victim on November 26 and learned that some information
she gave him did not match up with what appellant had said in his first
statement.  The detective contacted
appellant and told him that some of the facts were not matching up.  The detective gave appellant the Miranda
warnings, and appellant revised or amended his November 23 statement.  The record shows that the November 26
statement resulted from appellant responding to Afurther police-initiated custodial interrogation,@ and a valid waiver of his right to counsel
cannot be established by a showing that appellant was advised of his right to
counsel.  Oregon v. Bradshaw,
supra.  There was no evidence presented
at the suppression hearing that appellant initiated Afurther communications, exchanges, or
conversations@ with Detective Tauer at the time of the
second statement.  To the contrary, the
evidence clearly shows that the further interrogation was initiated by
Detective Tauer.  Therefore, the State
has failed to show that the State complied with the rule in  Edwards.  We hold that the trial court erred in admitting into evidence the
statement dated November 26, 2001.  See
Herron v. State, 86 S.W.3d 621 (Tex.Cr.App.2002).








We now
determine if the error in admitting the November 26 statement, which was
constitutional error, did not, beyond a reasonable doubt, contribute to the
conviction or punishment.  TEX.R.APP.P.
44.2(a).  In the second statement,
appellant stated that, while at the party, he took the keys to the apartment
and that he used the keys to enter the apartment.  Appellant admitted that he knowingly and intentionally entered the
victim=s apartment without the effective consent of
the victim.  This was an admission of an
essential element of the offense of burglary of a habitation with intent to
commit sexual assault.  In the first
statement, appellant stated that he passed out on the couch at the party.  At trial, the victim identified appellant as
the person who unlocked her door and broke the door chain.  The physical evidence at trial supported the
victim=s testimony as to how appellant entered the
apartment.  The victim testified that
she thought appellant was smoking crack at the party.  She testified that she saw appellant crush up a blue pill in the
bathroom.  However, on
cross-examination, the victim admitted that, in her statement given to the
authorities on November 23 and signed on November 26 after seeing appellant at
the hospital, she stated that she did not remember seeing appellant in her
apartment at the party.  The victim
testified that she was Apretty intoxicated@ at the time of the sexual assault and that she was pretty sure that
she did not smoke Acrack@ at the party.  We cannot conclude, beyond a reasonable doubt, that the admission
of appellant=s unconstitutionally obtained November 26
statement did not contribute to the jury=s verdict that appellant was guilty of burglary of a habitation with
intent to commit sexual assault.  We
reverse the judgment of the trial court as to the conviction of burglary of a
habitation with intent to commit sexual assault.  See McCarthy v. State, supra. 

We now
consider whether the second statement contributed to the aggravated sexual
assault conviction or the aggravated assault conviction.  Appellant did not admit that he committed
the aggravated sexual assault or the aggravated assault in the November 26
statement.   In the first statement,
which was  admissible, appellant
admitted that he was at the party and that, after the party, appellant was
awakened by the Amother@ kicking him.  In the first
statement, appellant said that he might have stabbed the victim.  Appellant=s attorney argued to the jury that the Awhole case is about sexual assault.@  The defensive theory was that
the victim had invented the sexual assault in order to collect damages against
the owner of the apartment for failing to provide a proper lock for the door.  We hold beyond a reasonable doubt that the
introduction of the November 26 inadmissible statement did not contribute to
the conviction or the punishment of either the aggravated sexual assault or the
aggravated assault conviction.  We
affirm each of those judgments.

In his
remaining issues, appellant challenges the imposition of the mandatory life
sentences. During the punishment phase of the trial, the State introduced
evidence showing that on April 17, 1989, appellant was convicted of Arape@ in Oklahoma.  Pursuant to TEX.
PENAL CODE ANN. ' 12.42 (Vernon 2003) the trial court
instructed the jury that, if the jury found the Oklahoma rape conviction to be Atrue,@ the jury was to return a mandatory sentence of life imprisonment as to
the burglary of a habitation with intent to commit aggravated sexual assault
and the aggravated sexual assault convictions.[4]

Section
12.42(c)(2) provides that a defendant convicted of aggravated sexual assault
who has been previously convicted under the laws of another state containing Aelements that are substantially similar to
the elements@ of the offense of sexual assault found in
TEX. PENAL CODE ANN. ' 21.11
(Vernon 2003) shall receive a punishment of mandatory life imprisonment.  See Section 12.42(c)(2)(A) & (B) for its
application to other listed offenses.








The trial
court took judicial notice of the Oklahoma rape statute and held that the
Oklahoma statute contained elements that were Asubstantially similar@ to TEX. PENAL CODE ANN. ' 22.011 (Vernon 2003) (Sexual Assault).  Appellant objected to the court=s jury instruction in the charge regarding mandatory life imprisonment
because: (1) the Oklahoma rape conviction was not substantially similar to the
Texas sexual assault offense listed in Section 22.011; (2) the jury should have
determined, as opposed to the court, whether the Oklahoma offense and the Texas
offense were substantially similar; and (3) the date of the Oklahoma offense
was essential in determining if the statute contained substantially similar
elements.

Statutory
interpretation is a question of law to be determined by the trial court, not
the jury.  See Kuhn v. State, 45 S.W.3d
207, 209 (Tex.App. - Texarkana 2001, pet=n ref=d). 
We review the trial court=s determination de novo.  The
Oklahoma Arape@ statute, at the time of appellant=s Aconviction,@ contained Aelements@ that were substantially similar to elements
contained in the Texas Asexual assault@
statute as defined in Section 22.011. 
The Oklahoma statute (rape) and the Texas statute (sexual assault)
permit conviction where physical force or violence was used or where threatened
fear or violence was used if the victim believed that the perpetrator had the
present or apparent ability or power to execute the threat.  See Section 22.011 and OKLA. STAT. ANN. tit.
21, ' 1111 (West 2003).  

Section 12.42(c)(2) provides in part:

A
defendant shall be punished by imprisonment in the institutional division for
life if:

 

(A) the defendant is convicted of an offense:

 

      (i) under Section 22.021 or 22.011,
Penal Code; and

 

(B) the defendant has been previously
convicted of an offense:

 

(v) under
the laws of another state containing elements that are substantially similar to
the elements of an offense listed in Subparagraph (i), (ii), (iii), or (iv).

 








Section 22.011 is listed
in Subparagraph (ii).  The statute does
not require that the facts and circumstances of the out-of-state offense be
substantially similar to the facts and circumstances that would allow conviction
under Section 22.011 before a court should impose a mandatory life
sentence.  We think that the State=s failure to prove when the Oklahoma offense
occurred did not prevent the application of Section 12.42(c)(2).  We overrule appellant=s issues relating to the imposition  of the mandatory life sentence for the
conviction of aggravated sexual assault.

We affirm
the trial court=s judgments as to the aggravated sexual
assault and the aggravated assault offenses. 
We reverse the trial court=s judgment as to burglary with intent to commit aggravated sexual
assault, and that offense is remanded to the trial court for a new trial.

 

AUSTIN
McCLOUD

SENIOR
JUSTICE

 

July 17, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of:  Wright, J., and 

McCall, J., and McCloud, S.J.[5]











[1]Appellant does not complain that the trial court failed
to comply with TEX. CODE CRIM. PRO. ANN. art. 38.22 (Vernon 1979 & Pocket
Part 2003).  See Blount v. State, 64
S.W.3d 451, 457 (Tex.App. - Texarkana 2001, no pet=n).





[2]The victim testified that the other female who was
present in her apartment during the party was her 19-year-old friend.  The victim stated that she, at times, told
people that the friend was her Adaughter.@





[3]See Miranda v. Arizona, 384 U.S. 436 (1966).





[4]Since we will reverse and remand the conviction for
burglary of a habitation with intent to commit aggravated sexual assault, we
need not address appellant=s remaining issues insofar as they relate to that
conviction.





[5]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.