FILED
United States Court of Appeals
Tenth Circuit

September 28, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BENJAMIN APPLEBY,

     Petitioner - Appellant,

v.

SAM CLINE, Warden; ATTORNEY
GENERAL OF KANSAS,

     Respondents - Appellees.

No. 17-3002
(D.C. No. 5:15-CV-03038-JTM)
(D. Kan.)

_____

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]
_____

Before **LUCERO**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

    Benjamin Appleby, a Kansas prisoner, seeks a certificate of appealability

(COA) to challenge the district court's denial of his habeas petition filed under

28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1)(A) (providing that no appeal may be

taken from a final order denying a § 2254 petition unless the petitioner obtains a

COA). We deny a COA and dismiss the appeal.

_____

[*] After examining the brief and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order is not binding precedent, except
under the doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and
10th Cir. R. 32.1.

I

A Kansas jury convicted Mr. Appleby for the 2002 capital murder and attempted rape of a 19-year-old college student. After the murder, Mr. Appleby fled Kansas and eventually was apprehended in Connecticut in 2004. He was arrested by Connecticut police on an outstanding warrant from 1998 on unrelated charges—risk of injury to a minor, disorderly conduct, and public indecency. *See State v. Appleby*, 221 P.3d 525, 532, 538-39 (Kan. 2009). Kansas detectives were present for the arrest and questioned Mr. Appleby, who confessed to committing both the murder and the attempted rape. The state trial court sentenced him to a life sentence without the possibility of parole for 50 years ("hard 50") on the capital murder conviction and a consecutive 19-year term on the attempted rape conviction. On direct appeal, the Kansas Supreme Court vacated as multiplicitous the attempted rape conviction and sentence but otherwise affirmed. Mr. Appleby unsuccessfully sought post-conviction relief in the state courts and then filed a federal habeas petition under 28 U.S.C. § 2254.

Relevant here, Mr. Appleby claimed that (1) submitting his confession to the jury violated his Fifth and Fourteenth Amendment rights against compelled self-incrimination; (2) Kansas's hard 50 sentencing scheme violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because it permits sentencing courts to find aggravating factors by a preponderance of the evidence; (3) trial and appellate counsel were ineffective in failing to raise suppression issues based on arguments that (a) the Connecticut

warrant was stale and (b) the Kansas detectives acted outside of their geographic jurisdiction; and (4) trial and appellate counsel were ineffective in failing to present evidence from a mental health expert and raising the issue on appeal. The district court determined these claims, all of which the state courts rejected on the merits, did not warrant relief. Mr. Appleby now seeks a COA from this court.

II

A COA is a jurisdictional prerequisite to our review. *See* 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a petitioner to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted).

Because the state courts denied Mr. Appleby's claims on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "requires federal courts to give significant deference to [the] state court decisions." *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013). Under AEDPA, a petitioner is not entitled to federal habeas relief unless the state-court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State

3

court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (internal quotation marks omitted), *cert. denied*, 137 S. Ct. 1333 (2017). "A state-court decision is an unreasonable application of Supreme Court precedent if the decision correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks omitted). A state court's factual determinations are presumed correct and are rebuttable only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We consider only "the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## A. Confession

Mr. Appleby first claims that submitting his confession to the jury violated his Fifth and Fourteenth Amendment rights against compelled self-incrimination because he confessed after repeatedly asking about an attorney. During the book-in process on the Connecticut charges, and before ever speaking with the Kansas detectives or even knowing they were present, Mr. Appleby asked a Connecticut detective if he could speak to an attorney about refusing to submit to a DNA swab; three other times during the book-in process on the Connecticut charges, he asked more generally if he

4

would have an opportunity to speak with an attorney. But once he was transferred to the Kansas detectives, Mr. Appleby agreed to answer their questions about the murder, waived his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and gave the Kansas detectives a two-and-a-half hour interview without requesting to speak with or have the assistance of an attorney.

The Kansas Supreme Court rejected this claim on direct appeal, and the federal district court denied habeas relief, concluding that the Kansas Supreme Court applied legal standards consistent with federal law in a reasonable manner.[1] Under the controlling COA standards, no reasonable jurist could debate the district court's resolution of the claim.

Initially, the district court noted that the Kansas Supreme Court reasonably applied *Davis v. United States*, 512 U.S. 452 (1994), in declining to broadly construe any mention of an attorney as a request for counsel for purposes of interrogation. In *Davis*, the Supreme Court held that a "suspect must unambiguously request counsel." *Id.* at 459. As the Court explained, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.* In light of *Davis*, the

---

[1] Mr. Appleby asserts the Kansas Supreme Court's decision was contrary to, or involved an unreasonable application of, *Davis v. United States*, 512 U.S. 452 (1994); *McNeil v. Wisconsin*, 501 U.S. 171 (1991); *Minnick v. Mississippi*, 498 U.S. 146 (1990); *Arizona v. Roberson*, 486 U.S. 675 (1988); *Smith v. Illinois*, 469 U.S. 91 (1984); *Edwards v. Arizona*, 451 U.S. 477 (1981); and *Miranda*.

Kansas Supreme Court evaluated the circumstances of Mr. Appleby's inquiries to determine whether he invoked his Fifth Amendment right to counsel and, applying *McNeil v. Wisconsin*, 501 U.S. 171 (1991), and *Montejo v. Louisiana*, 556 U.S. 778 (2009), concluded he did not.

In *McNeil*, the Supreme Court distinguished the Sixth Amendment right to counsel in criminal prosecutions from the Fifth Amendment right to counsel to assist with custodial interrogations. "The Sixth Amendment right," the Court explained, is "offense specific" and "cannot be invoked once for all future prosecutions." 501 U.S. at 175. But the right to counsel emanating from the Fifth Amendment's guarantee against compelled self-incrimination is intended "to counteract the inherently compelling pressures of custodial interrogation." *Id.* at 176 (internal quotation marks omitted). Although it is not offense specific, given its purpose, it is invoked "only when the suspect has *expressed* his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*." *Id.* at 178 (brackets and internal quotation marks omitted). The suspect must express "a desire for the assistance of an attorney *in dealing with custodial interrogation by the police*." *Id.*

Building on *McNeil*, the *Montejo* Court dismissed concerns that a suspect could anticipatorily invoke his Fifth Amendment right to counsel at a preliminary hearing, in advance of interrogation:

> "We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . ." *McNeil*, 501 U.S. at 182 n.3. What matters for *Miranda* and *Edwards* [*v. Arizona*, 451 U.S. 477 (1981),] is what happens when the defendant is approached for interrogation, and (if he consents) what happens

6

during the interrogation—not what happened at any preliminary hearing.

556 U.S. at 797.

Applying these authorities, the Kansas Supreme Court analyzed the timing, content, and context of Mr. Appleby's inquiries and concluded that he failed to unambiguously invoke his Fifth Amendment right to counsel for purposes of interrogation on the Kansas charges. *See Appleby*, 221 P.3d at 542, 548. As the district court observed, the Kansas Supreme Court determined that Mr. Appleby's request for counsel in response to the DNA swab sought only limited assistance for purposes of refusing the DNA swab, not to assist with his custodial interrogation. *See id.* at 542. His other references to an attorney, the Kansas Supreme Court ruled, generally inquired during the book-in process on the Connecticut charges whether he would have an *opportunity* to talk to a lawyer. *See id.* at 548. At that time, he did not know about the Kansas case, nor had he been questioned on any charges from either Connecticut or Kansas. *Id.* Moreover, the Connecticut detective to whom he inquired told him that someone else would be questioning him. *Id.* Under these circumstances, the district court concluded that the Kansas Supreme Court's decision was consistent with, and a reasonable application of, federal law. No reasonable jurist could debate the district court's conclusion. Consequently, Mr. Appleby fails to show he is entitled to a COA on this claim.[2]

_____

[2] Mr. Appleby refers in passing to what he asserts is the Kansas Supreme Court's unreasonable determination of the facts. Citing testimony he gave later at his

(continued)

7

*B.  Hard 50 Sentencing Scheme Under* Apprendi

Mr. Appleby was sentenced to life in prison without the possibility of parole for 50 years under Kansas's hard 50 sentencing scheme, which at the time permitted sentencing courts to find aggravating circumstances based on a preponderance of the evidence.  On direct appeal, he claimed the hard 50 sentence violated *Apprendi*, 530 U.S. at 490, which held that other than a prior conviction, any fact that increases the *maximum* sentence is an element of the offense that must be submitted to the jury and proven beyond a reasonable doubt.  The Kansas Supreme Court rejected Mr. Appleby's claim in its 2009 decision, holding that Kansas's hard 50 sentencing scheme was constitutional because it enhanced the *minimum* sentence a defendant must serve, without exposing a defendant to a greater maximum sentence. *See Appleby*, 221 P.3d at 558 (citing *State v. Johnson*, 159 P.3d 161, 166 (Kan. 2007)).  Nearly four years later, the Supreme Court extended *Apprendi* to require that any fact that increases the mandatory minimum sentence is an element that must be submitted to a jury and proven beyond a reasonable doubt.  *Alleyne*, 133 S. Ct. at 2155.  Mr. Appleby now seeks a COA, claiming the Kansas Supreme Court's decision is contrary to, or an unreasonable application of, *Apprendi* and *Alleyne*.

---

state post-conviction evidentiary hearing, he says he asked to call his lawyer as soon as he was brought into the interrogation room and realized he was being questioned about the Kansas case.  We decline to consider this issue because Mr. Appleby did not raise it in the district court.  *See Ochoa v. Workman*, 669 F.3d 1130, 1146 n.15 (10th Cir. 2012).

We deny a COA on this claim because no reasonable jurist could debate the district court's conclusion that federal courts measure the state-court decisions against Supreme Court precedent "as of the time the state court renders its decision." *Cullen*, 563 U.S. at 182 (internal quotation marks omitted); *see Smith*, 824 F.3d at 1241 ("In analyzing a state-court decision's compliance with clearly established federal law, we measure the decision against the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."). When the Kansas Supreme Court adjudicated this claim in 2009, its decision complied with *Apprendi*; *Alleyne* was not decided until nearly four years later.

### C. Ineffective Assistance

We turn now to Mr. Appleby's ineffective-assistance claims, which were rejected by the state courts on post-conviction review. Under *Strickland v. Washington*, 466 U.S. 668 (1984), Mr. Appleby "must show both that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense." *Hooks v. Workman*, 689 F.3d 1148, 1186 (10th Cir. 2012) (internal quotation marks omitted). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Id.* "Surmounting this high bar is not an easy task," and "[a] state prisoner in the § 2254 context faces an even greater challenge." *Id.* at 1187 (internal quotation marks omitted). In the § 2254 context, a federal court must "defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision

in how to best represent a client." *Id.* (brackets and internal quotation marks omitted). Thus, habeas review of counsel's performance is "doubly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam). To show prejudice, a prisoner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Premo v. Moore*, 562 U.S. 115, 122 (2011) (internal quotation marks omitted).

### 1. Suppression Arguments

Mr. Appleby contends his trial and appellate attorneys were ineffective in failing to raise suppression arguments based on the outstanding Connecticut warrant from 1998 and the extra-jurisdictional work of the Kansas detectives. Reasonable jurists could not debate the district court's denial of relief on these claims because in each instance, the Kansas Court of Appeals reasonably applied *Strickland* in concluding that Mr. Appleby failed to show either that counsel's performance was deficient or that he was prejudiced.

#### a. Outstanding Warrant

The state courts rejected Mr. Appleby's claims that his attorneys were ineffective in failing to seek the suppression of evidence based on the delay in executing the Connecticut warrant from 1998. The Kansas Court of Appeals ruled that even if his trial attorneys acted deficiently in failing to pursue this theory, Mr. Appleby showed no prejudice because his arrest was legal, given that he caused the delay by eluding Connecticut authorities to prevent them from executing the warrant. *See Appleby v. State*, No. 108,777, 2014 WL 801921, at \*13-15 (Kan. Ct.

App. 2014) (per curiam) (unpublished). The court explained that delay in executing an arrest warrant may be reasonable under Connecticut law if a suspect "consciously eluded the authorities[] or for other reasons was difficult to apprehend." *Id.* at *13 (internal quotation marks omitted). The court then detailed Mr. Appleby's efforts to evade the Connecticut police, which included giving them his alias—Teddy Hoover—and fleeing the state less than two months after he confessed to committing the crime (risk of injury to a minor). *Id.* at *14. The court also described information indicating that Mr. Appleby had been in Connecticut, Missouri, and Kansas, and possibly Nevada and Texas as well, using both his real name and his alias. *Id.* Thus, the court concluded that the delay in executing his warrant was not unreasonable and his stale-warrant argument failed. *Id.* at *14-15.

The district court, citing the Kansas Court of Appeals' conclusion that any motion to suppress based on staleness would have failed, determined that the Kansas Court of Appeals reasonably applied *Strickland*. This conclusion is not subject to reasonable debate because the outstanding-warrant determination, which precluded Mr. Appleby from showing the result of the proceedings would have been different, reasonably applied *Strickland*'s prejudice prong.

Also, absent evidence that Mr. Appleby's appellate counsel unreasonably declined to raise this issue on appeal or that Mr. Appleby was prejudiced by her failure to do so, the Kansas Court of Appeals determined that appellate counsel was not ineffective in failing to challenge the warrant on direct appeal. *Id.* at *20. The

11

district court concluded this was a reasonable application of *Strickland*. Again, jurists of reason could not debate the district court's conclusion.

### b. *Geographic Jurisdiction of Kansas Detectives*

Mr. Appleby also contends his attorneys were ineffective in failing to pursue suppression issues based on the Kansas detectives' extra-jurisdictional work in Connecticut. The Kansas Court of Appeals examined the relevant Kansas statute, which authorized officers to exercise their police powers anywhere their assistance is requested or when they are in fresh pursuit. *Id.* at *15. The court observed that trial counsels' performance was not objectively unreasonable in failing to object on this basis because they sought to suppress evidence from his interview on numerous other grounds. *Id.* at *15-16. Further, the court concluded that Mr. Appleby was not prejudiced because the statute did not prohibit the Kansas detectives from questioning him in Connecticut, and although the Kansas detectives collaborated with Connecticut officers, it was Connecticut officers who executed the warrant, which was issued by that state, in that state, for charges filed in that state, and Mr. Appleby agreed to talk with the Kansas detectives. *Id.* at *18. Additionally, the court noted the lack of any evidence either that appellate counsel was deficient in failing to raise this issue on appeal or that Mr. Appleby was prejudiced by her failure to do so. Under these circumstances, the district court determined that this, too, was a reasonable application of *Strickland*, both as it relates to trial counsel and appellate counsel. Again, no reasonable jurist would debate the district court's resolution of these claims.

12

*2. Mental Health Expert*

Finally, Mr. Appleby contends his trial counsel rendered ineffective assistance by failing to proffer the testimony of Dr. George Hough, a clinical psychologist and mental health expert. Before trial, Dr. Hough diagnosed Mr. Appleby with intermittent explosive disorder and antisocial personality disorder. According to Mr. Appleby, Dr. Hough's testimony would have supported his theory of defense that he lacked the requisite intent of premeditation to commit capital murder due to a mental disease or defect. The Kansas Court of Appeals rejected this claim and concluded that defense counsel's decision not to call Dr. Hough failed to satisfy either prong of the *Strickland* test. *Id.* at *10-11. Here again, no reasonable jurist could debate the district court's conclusion that the Kansas Court of Appeals reasonably applied *Strickland*.

In evaluating counsel's performance, courts "apply a strong presumption that counsel's representation was within a wide range of reasonable professional assistance." *Premo*, 562 U.S. at 121. Consistent with this standard, the Kansas Court of Appeals concluded there were several reasons why trial counsel acted reasonably in declining to call Dr. Hough. First, Mr. Appleby's trial attorney did not believe his diagnosis of antisocial personality disorder would benefit their case, and indeed, Dr. Hough acknowledged that his testimony would not be helpful. *See Appleby*, 2014 WL 801921, at *10. Second, Dr. Hough refused to offer an opinion whether Mr. Appleby could form the requisite criminal intent of premeditation and counsel believed there was other evidence that Mr. Appleby did form the requisite intent. *Id.*

13

Third, co-counsel agreed that Dr. Hough could be a detrimental witness and that the better strategy was to attack the prosecution's timeline of events. *Id.* Last, Mr. Appleby's trial attorneys consulted with a nationally recognized capital defense attorney, who concurred that Dr. Hough's testimony would not benefit the defense. *Id.* Under these circumstances, the Kansas Court of Appeals determined that counsels' strategy not to call Dr. Hough was not so unreasonable as to fall outside of prevailing professional norms. *Id.* Further, the court determined there was no evidence that appellate counsel was ineffective in failing to raise this issue on appeal. *Id.* at *20.

The district court concluded that the Kansas Court of Appeals' decision reasonably applied *Strickland*'s deficient-performance prong as it related to trial counsel and also reasonably applied the relevant *Strickland* standards to deny the claims of ineffective assistance of appellate counsel. Because the district court's conclusions are not subject to reasonable debate, Mr. Appleby is not entitled to a COA.

### III

Accordingly, we deny a COA and dismiss this appeal.

Entered for the Court

Jerome A. Holmes
Circuit Judge